# Bondurant v. The State.

### Indictment for Murder.

1. *Organization of jury in City Court of Selma; construction of statute.*—The act approved December 9, 1898, "to provide for and regulate the selection, drawing and impanelling of grand and petit juries in Dallas county," (Acts of 1898-99, p. 6), provides no special method as to how the clerk of the circuit court is to furnish the clerk and register of the city court the list of persons drawn to serve as jurors in the city court; and upon its being shown that the clerk of the circuit court is the authorized deputy of the clerk and register of the city court, and that as such deputy he issued a *venire facias* to the sheriff in the name of and for the clerk and register of the city court, obtaining the name of such jurors from the list of persons drawn to serve as jurors for that term of the city court by the jury commissioners, of which he was the custodian, as the deputy to the clerk of the circuit court, a motion to quash the venire of the juries so drawn is properly overruled; the drawing of such venire being in compliance with the provisions of the statute.

2. *Criminal law; motion for a new trial.*—The statute allowing appeals to the Supreme Court from judgments granting or refusing to grant motions for a new trial applies only to civil cases; and, therefore, the overruling of a motion for a new trial in a criminal case is not revisable on appeal.

3. *Impeachment of witness; charge of court to jury.*—Where a witness who has testified in a case, has been impeached by testimony showing that he had made contradictory statements, a charge of the court which instructs the jury that the purpose

[Bondurant v. The State.]

of an impeachment is to show that the witness impeached is not worthy of credit, but that the testimony of the contradictory statements does not show that said statements were true or untrue, and is not original evidence in the case, is free from error.

4. *Homicide; charge as to formed design.*—On a trial under an indictment for murder, a charge which instructs the jury that if in the instant before the killing a person conceives the idea of deliberately and premeditatedly taking the life of a man and does slay him, such killing would be murder in the first degree, although the purpose of the killing was conceived only an instant before that time, asserts a correct proposition of law, and the giving of such an instruction by the court in its general charge is free from error.

5. *Charge of court as to evidence.*—In a criminal case, a charge is free from error which instructs the jury that "If the evidence is irreconcilable you must consider that evidence which you deem worthy of credit and discard that which you do not deem worthy of credit. You must give the evidence just such weight as you think it deserves."

6. *Homicide; charge as to malice.*—On a trial under an indictment for murder, a charge is free from error which instructs the jury that in a case of homicide the law presumes malice from the use of a deadly weapon, and casts on the defendant the onus of repelling the presumption of malice unless the evidence which proves the killing shows also that it was perpetrated without malice; and whenever malice is shown and is unrebutted by the circumstances of the killing, or by other facts in evidence, there can be no conviction for any degree of homicide less than murder.

7. *Same; same.*—On a trial under an indictment for murder, a charge which instructs the jury "that in cases of homicide no mere words used by the deceased towards the defendant, however abusing or insulting, will reduce the offense or degree of homicide to less than murder," is free from error, and properly given at the request of the State.

8. *Same; charge as to self-defense.*—On a trial under an indictment for murder, a charge is free from error which instructs the jury that the apparent necessity which will excuse the taking of human life under the doctrine of self-defense involves that "(1) the defendant himself must have entertained an honest belief in the existence of such necessity, and (2) the circumstances surrounding him must have been such as to impress a reasonable man under the same state of facts with the belief of his imminent peril and of the existence of an urgent necessity to take the life of his assailant, as the only apparent al-

[Bondurant v. The State.]

ternative of saving his own life, or else of preventing the infliction on him of grievous bodily harm."

9. *Same; charge ignoring duty of retreat.*—On a trial under an indictment for murder, charges requested by the defendant predicating his right to acquittal upon the doctrine of self-defense, but which ignore the duty on the part of the defendant to retreat, are erroneous and properly refused.

APPEAL from the City Court of Selma.

Tried before the Hon. J. W. MABRY.

The appellant, Cager Bondurant, was indicted and tried for the murder of William Lipscomb, was convicted of murder in the second degree and sentenced to the penitentiary for ten years. When the case was called for trial, there was a motion made to quash the venire of the regular juries. The grounds of this motion and the facts pertaining thereto are sufficiently stated in the opinion. The motion was overruled, and the defendant duly excepted.

The evidence for the State tended to show that the defendant was guilty of murder. The evidence for the defendant tended to show that he shot the deceased in self-defense.

Louis Jackson, a witness introduced by the State, testified that he was present at the time of the killing and narrated the circumstances of the killing. Upon the witness being recalled, he was asked if he did not state to Mr. Percy Dawson, the chief of police on the night of the killing, certain facts which were in conflict with his testimony as given on the trial. The witness testified that he did not remember making such statements and did not desire to change or explain any of the testimony that he had given on the trial of the case.

Upon Mr. Percy Dawson being called as a witness, he testified that Louis Jackson did, on the night of the killing of William Lipscomb, testify to the facts referred to in the question asked the witness Louis Jackson.

In his charge to the jury the court instructed them in reference to the impeachment of the witness Louis Jackson as follows: "Gentlemen of the jury, when a witness testifies for one side it is competent for the other side to introduce another witness to swear that on a par-

ticular occasion that witness made statements different
from the statements that he made on the stand, and that
is done for the purpose of impeaching or tending to im-
peach the particular witnesses's veracity before the jury.
That is the purpose of introducing Mr. Dawson here.
The defendant claims that this particular witness, Louis
Jackson, made statements to Mr. Dawson different from
the statements he testified to here, and that is done for
the purpose of tending to show (and it is for you to give
the evidence such weight as it is entitled to), he is not
worthy of credit, and that is the purpose for which it
was introduced.   That, however, does not show in any
manner that what he told Mr. Dawson was true or un-
true.   In other words what he told Mr. Dawson is a dec-
laration made by him outside of the court, and that it
itself is not original evidence in this case.   It is evidence
tending to show that this witness made contradictory
statements about this case." To this portion of the
court's general charge the defendant duly excepted.

The bill of exceptions then contains the following re-
cital in reference to the court's charge: "Thereupon the
court gave, orally, its general charge to the jury, and in
said charge, the court, after instructing them as to the
elements, respectively, of murder in the 1st degree and
murder in the second degree and manslaughter in the
first degree, and that to constitute murder in the 1st de-
gree the killing must have been willful, deliberate, ma-
licious and premeditated, and that it was essential to con_
stitute that crime that all these elements should co-exist
in the mind of the slayer at the time of the killing, and
that the premeditation and deliberation need not have
been the creation of a week or two, or any particular
length of time, but that it is sufficient if these, with the
other two elements, existed in the mind of the slayer, at
the time of the killing, though they may have existed for
only a moment before—in said charge made use of the
following language or illustration—'For instance if I in
the instant before the killing conceived the idea of delib-
erately and premeditatedly taking the life of a man, and
did do it, it would be murder in the 1st degree, although
I conceived that purpose only an instant before,'" The

defendant separately excepted to this portion of the court's general charge, and also separately excepted to the following portions of said charge which are numbered for convenience: (1) "If the evidence is irreconcilable, you must consider that evidence which you deem worthy of credit, and discard that which you do not deem worthy of credit. You must give the evidence just such weight as you think it deserves." (2) "Gentlemen of the jury, the court instructs the jury that they should weigh all the evidence and reconcile it if possible; but if there be irreconcilable conflict in the evidence they ought to take that evidence which they think worthy of credit and give it just such weight as they think it entitled to." (3) "In weighing the evidence each piece and all the evidence should be weighed with all the other evidence. And you should make up your verdict from due consideration of the whole of the evidence. If the jury, after considering all the evidence, have a reasonable doubt of defendant's guilt, arising out of any part of the evidence, they should find him not guilty. But this does not mean that you have got to find every single item of testimony to be true before you can convict. If after weighing all the evidence, you have a reasonable doubt as to any of the elements which constitute any offense charged in this indictment, then you are bound to acquit. It does not mean that you have got to believe every word of the testimony in order to convict."

At the request of the State, the court gave to the jury the following written charges: (1.) "The court charges the jury that in a case of homicide the law presumes malice from the use of a deadly weapon, and casts on the defendant the onus of repelling the presumption of malice, unless the evidence which proves the killing shows also that it was perpetrated without malice; and whenever malice is shown and is unrebutted by the circumstances of the killing, or by other facts and evidence, there can be no conviction for any degree of homicide less than murder." (2.) "The court charges the jury that in the case of homicide no mere words used by the deceased towards the defendant, however abusing or insulting, will reduce the offense or degree of homicide to

less than murder." (3.) "The court charges the jury that the apparent necessity which will excuse the taking of human life, under the doctrine of self-defense, in cases of homicide, involves two considerations: (1) The defendant himself must have entertained an honest belief in the existence of such necessity; and (2). The circumstances surrounding him must have been such as to impress a reasonable man under the same state of facts with the belief of his imminent peril and of the existence of an urgent necessity to take the life of his assailant, as the only apparent alternative of saving his own life, or else of preventing the infliction on him (the defendant) of grievous bodily harm." (6.) "The court charges the jury that if they find from the evidence in this case, beyond all reasonable doubt, that the defendant, in Dallas county, Alabama, and before the finding of this indictment, purposely killed Bill Lipscomb, alias William Lipscomb, by shooting him with a pistol, with a wickedness or depravity of heart towards the deceased, and the killing was determined on beforehand and after reflection (for however short a time before the fatal shooting was done, is immaterial), then the defendant is guilty of murder in the first degree." (7.) "The court charges the jury that if they find from the evidence in this case, beyond all reasonable doubt, that the defendant, in Dallas county, Alabama, and before the finding of this indictment, purposely killed the deceased, Bill Lipscomb, alias William Lipscomb, after reflection, with a wickedness or depravity of heart towards deceased, and the killing was determined on beforehand, even a moment before the fatal shooting was done, then the defendant is guilty of murder in the first degree."

The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by him: (E.) "A man has the right to act on the reasonable appearance of things; and if at the time of the homicide the defendant, not being at fault in bringing on the difficulty, was reasonably impressed with the fact that his danger was real, then he had the right to act on appearances, even though it should turn

out that there was no real danger." (M.) "The flight of a defendant in a criminal case may or may not be considered as a circumstance tending to prove guilt, depending upon the motive which prompted it, whether a consciousness of a guilt and a pending apprehension of being brought to justice caused the flight, or whether it was caused from some other and more innocent motive, and the jury may look to the fact that he gave himself up." (N.) "If the jury, after considering the whole evidence, have a reasonable doubt as to an existence of an apprehension of immediate danger or bodily harm, and that the defendant had a right to anticipate that danger, they must acquit."

No counsel marked as appearing for appellant.

CHAS. G. BROWN, Attorney-General for the State, cited *Martin v. State*, 77 Ala. 1; *Wilkins v. State*, 98 Ala. 1; *Ex parte Sloan*, 95 Ala. 22; *Hamil v. State*, 90 Ala. 577; *Jackson v. State*, 78 Ala. 473.

TYSON, J.—A motion was made in the court below to quash the *venire* of regular jurors. This motion contained numerous grounds, but the *gravamen* of complaint in it may be stated to be that the *venire facias juratores* was issued by the clerk and register of the city court, when it should have been issued by the clerk of the circuit court, or by the clerk and register of the city court only after being furnished with a list of the names of the persons drawn to appear and serve as jurors.

Under the provisions of the act, "to provide for and regulate the selection and drawing and impanelling of grand and petit juries in Dallas county, Alabama," approved Dec. 9th, 1898, (Acts, 1898-99, p. 69), it is made the duty of the clerk of the circuit court to attend all sittings of the jury commissioners and keep a record of the names, etc. of all jurors drawn under the provisions of this act ,and to preserve them in his office as clerk of the circuit court.

Section 5 provides: "That upon the completion of any such drawing of juries the said clerk of the circuit court

must issue an order in writing to the sheriff of Dallas county commanding him to summon the persons so drawn to appear and serve as jurors, setting forth in said order the name, occupation and residence of every person named in said order and the week of the court for which said juror is to serve, and the sheriff, or other person acting in his place, shall execute said order by giving personal notice to such person or by leaving the written notice at the place of his residence with some member of his family or some person residing in the same house, three days before the day appointed for the commencement of the court; and said order must be returned to the clerk of the court from which it issued, with the proper return thereon, by the sheriff, by the day appointed for the meeting of the court."

It would appear from the reading of the above quoted section, that the clerk of the circuit court is the only person authorized to issue the *venire facias* notwithstanding the persons drawn and summoned are to appear for service as jurors in the city court of which he is not the clerk. And yet the duty is imposed upon the sheriff to return the order to the *clerk of the court from which it issued.* It will be readily seen that if this section was the only one regulating this matter, that some interpretation would have to be given to its language to avoid the apparent conflict shown in it. However, section 12 of the act which is in the following language: "That whenever any juries are drawn under this act, to serve in the city court of Selma, the clerk of the circuit court must furnish a list of persons so drawn to the clerk and register of the said city court, who must issue the necessary order to the sheriff as provided in section five of this act," etc., eliminates all confusion on this point and clearly empowers the clerk and register of the city court to issue the *venire facias* to the sheriff. It will be well to note that no prescriptive mode or method is provided as to how the clerk of the circuit court is to furnish the clerk and register of the city court the list of persons drawn to serve as jurors in the city court. All that is required of him, is that he furnish it. In the evidence offered upon the hearing of the motion to

quash, it appears that the clerk of the circuit court is the authorized deputy of the clerk and register of the city court. That as such deputy he issued the *venire facias* to the sheriff in the name of and for the clerk and register of the city court, obtaining the names of the jurors placed thereon from the list of persons drawn to serve as jurors for that term of the city court by the jury commissioners, of which he as clerk of the circuit court is the legal custodian. In our opinion the court committed no error in overruling the motion to quash.

The overruling of the motion for a new trial is not revisable here. The statute allowing appeals to this court from decisions granting or refusing to grant motions for new trials applies only to civil cases at law. Code, § 434 and authorities cited under it.

Many exceptions were reserved by the defendant to the introduction and exclusion of evidence by the court during the progress of the trial. However, it will serve no good purpose to review the rulings of the court in respect thereto, since all of them are manifestly unmeritorious.

It is too plain to admit of discussion, that the court's statement of the law governing the effect of the testimony introduced for the purpose of impeaching the witness, Louis Jackson, was not incorrect.

The other portions or parts of the oral charge of the court to the jury excepted to, asserted correct propositions of law.

Written charges 1, 3, 6 and 7, given at the request of the State, are substantial copies of charges 1, 2, 8 and 7 approved by this court in *Wilkins v. The State,* 98 Ala. 1, and reaffirmed in *Miller v. The State,* 107 Ala. 40. See also *Martin v. The State,* 77 Ala. 1.

Written charge 2 given at the instance of the State asserts a correct proposition of law.—*Ex parte Sloane,* 95 Ala. 22; *Jones v. The State,* 96 Ala. 102; *Reese v. The State,* 90 Ala. 624.

Charge M refused to the defendant was abstract, and should not have been given.

Charges E and N requested by defendant were flagrantly faulty, whatever else may be said of them, in ig-

noring the duty of the defendant to retreat.—*Goodwyn v. The State,* 102 Ala. 87, and authorities there cited.

We find no error in the record, and the judgment must be affirmed.