# Dunn *alias* Hopkins *v.* The State.

| 143 | 67 |
| 144 | 34 |
| 144 | 40 |

### *Indictment for Murder.*

1. *Indictment; motion to quash.*—The fact that a grand juror, who afterwards participated in finding an indictment, was not present when the other members were sworn, is insufficient to support a motion to quash the indictment, when it is shown that, upon the juror afterwards coming into court, he was properly sworn and qualified, and the portion of the charge already given was rehearsed to him.

2. *Same; same.*—Under Sec. 5269 of Code, no objection to the formation of a grand jury can be considered, except that the jurors were not drawn in the presence of the officers designated by law.

3. *Special venire; motion to quash; when made too late.*—A motion to quash a special venire comes too late when not made until after the jury, to try the case, had been selected and accepted by the State and the defendant.

4. *Previous threats, basis of admissibility as evidence.*—Before evidence of previous threats by deceased is properly admissible in a homicide case, the evidence adduced must have a tendency to show that the accused was without fault in bringing on the difficulty; that he was in imminent peril, real or reasonably apparent, of loss of life or limb; and that he could

not, as the matter presented itself to him, retreat or avoid the combat with safety to himself.

5. *Physical condition of defendant, when inadmissible as evidence.*
The physical condition of a defendant cannot be shown in evidence, unless the same predicate be laid as would be necessary for the admissibility of evidence of previous threats.

APPEAL from the Circuit Court of Pickens.

Tried before the Hon. SAMUEL H. SPROTT.

The facts sufficiently appear in the opinion. The defendant excepted to the giving by the court, at the written request of the State, charges numbered one and two, which are in the following language: 1. " 'Deliberate' and 'premeditated,' as these words are used in the statute defining murder, mean only this, that the slayer must intend before the blow is delivered, though it be only for an instant of time before, that he will shoot at the time he does shoot, and that death will be the result of the shot; or, in other words, if the slayer had any time to think before the act, however short, such time may have been even a single moment, and did think, and he shot as a result of an intention to kill, produced by even this momentary operation of the mind, and death ensued, that would be a deliberate and premeditated killing within the meaning of the statute defining murder in the first degree." 2. "The court charges the jury that, if the defendant, in Pickens county, and before the finding of this indictment, purposely killed the deceased, Joe Ray, by shooting him with a gun, with a wickedness or depravity of heart towards said deceased, and the killing was determined on before hand, and after reflection (for however short a time before the fatal shooting was done is immaterial) the defendant is guilty of murder."

After the court without objection had duly impaneled the jury to try the case, and after the jury had been selected and accepted by the State and the defendant, the defendant moved the court to quash the special venire served on him. because, on the copy served on him, the name of John R. Carver, Jr., appeared, and the defendant offered testimony to show that there was no such

[Dunn *alias* Hopkins v. The State.]

person as John R. Carver, Jr., in the county of Pickens. The court overruled the motion and defendant excepted, and assigns this action of the court as error.

WILLETT & WILLETT, for appellant.—An indictment, found and returned by a grand jury not properly organized, will not support conviction.—*Berry v. State,* 63 Ala. 126; *Finley v. State,* 61 Ala. 201; *Ramsey v. State,* 113 Ala. 49.

The motion to quash the special venire should have been granted.—*Darby v. State,* 92 Ala. 9; *McQueen v. State,* 94 Ala. 50.

If duplicating the names of a jury is depriving defendant of his right to the full number, how much more is the deprivation where the names of fictitious jurors are drawn and served on him.—*Ryan v. State,* 100 Ala. 105; *Darby v. State,* 92 Ala. 9; *McKee v. State,* 82 Ala. 32; *State v. Gibson,* 89 Ala. 121.

MASSEY WILSON, Attorney-General, for the State.—

1. The motion to quash the indictment was properly overruled. The record affirmatively shows that the defendant was not injured by the fact that the grand juror Richardson was not present when the court commenced to charge the jury. When Richardson was sworn and placed on the jury, the court "rehearsed" that part of the charge which had been delivered in his absence. Code, § 4333.

2. The motion to quash the venire came too late. *Ryan v. State,* 100 Ala. 105, 108. And even on its merits the motion was properly overruled.—*Arp v. State,* 97 Ala. 5; *Barnes v. State,* 134 Ala. 34, 41.

3. Not being in a position to set up self-defense, evidence as to physical condition of the defendant or his antagonist, or of threats made, or of previous difficulties, cannot be shown.—*Surginer v. State,* 134 Ala. 120, 126.

4. The first charge given at request of the solicitor, defining murder in the first degree, is correct.—*Daughdrill v. State,* 113 Ala. 7, 32; *Cleveland v. State,* 86 Ala. 1, 9.

The second charge given at the request of the solicitor has been several times approved.—*Clarke v. State,* 106 Ala. 91, 95; *Hansill v. State,* 90 Ala. 577, 582; *Lang v. State,* 83 Ala. 1.

DENSON, J.—The defendant was convicted in the court below of murder in the first degree, and was sentenced to imprisonment in the penitentiary for life. From the judgment of conviction he has appealed.

The first question, presented by the record for consideration, relates to the action of the court in overruling a motion to quash the indictment. The motion was based upon the ground that one Richardson, who had been summoned as a grand juror, was not present when the other members of the grand jury were sworn, but, that he came in the court room after the jury was sworn and while the presiding judge was engaged in delivering his charge to the jury. That the court's attention was called to the fact that Richardson was present, and thereupon the court had him duly sworn as a member of the grand jury and he took his seat as one of the jury. The bill of exceptions shows affirmatively, that the presiding judge then rehearsed that part of the charge which was delivered in the absence of said Richardson, and the jury was then charged as a whole and placed in the charge of a bailiff, with instructions to retire and enter upon the discharge of their duties, and that Richardson participated in the finding of the indictment against the defendant.

We fail to see any merit in the contention of the defendant upon this question, even if we were without a statute regulating such questions. Section 5269 of the Code, points out the only objection which may be taken to an indictment, by plea in abatement or otherwise, with respect to the formation of the grand jury. The ground stated in the statute is that the grand jurors were not drawn in the presence of the persons designated by law. Furthermore, if error could be predicated of the court's action in overruling the motion, we think

it would be error without injury to the defendant, and would be healed by section 4333 of the Code.

The motion to quash the special venire was not made until after the jury to try the case had been selected and accepted by the State and the defendant. The motion came too late, and, for this reason, if for no other, the court did not err in overruling it.—*Ryan's case,* 100 Ala. 105; *Longmire's case,* 130 Ala. 66.

. The defendant sought to prove previous threats made by the deceased, which were communicated to defendant before the fatal shooting. As was well said, in the case of *Rutledge v. State,* 88 Ala., "Before evidence of previous threats by, or difficulties with, or ill feeling on the part of the deceased, is properly admissible in a homicide case, the evidence adduced must have some tendency to establish the constituents of the right to destroy life that life may be preserved—which are, that the accused was without fault in bringing on the fatal rencounter; that he was in imminent peril, real or reasonably apparent, of loss of life or limb; and that he could not, as the matter presented itself to him, retreat or avoid the combat with safety to himself. The theory of the rule is, that a right to kill can never be the result of the violent, bloodthirsty disposition, revengeful feeling, or threats of the deceased; and hence, until there are facts offered which go in some measure to establish the necessity to strike, as the law defines that necessity, such evidence is patently irrelevant."—*Rutledge's case,* 88 Ala. 85; *Jones' case,* 116 Ala. 468.

The evidence in the case, on the part of the State, clearly showed that the defendant sought the deceased and killed him from a spirit of retaliation and revenge, for the purpose of punishing the deceased for past injuries done him.

The defendant's evidence falls far short of making a case, in which the doctrine of self-defense could be rightfully invoked. The testimony, without conflict, showed that on Sunday morning, at the house of one George Hughes, the defendant and the deceased were engaged in a game of craps, and that, while so engaged, a diffi-

culty occurred between them, and the evidence of the defendant tended to show, that the deceased struck him a severe blow with a pair of brass knucks, and that he went at once to his house a mile away, got his gun and mule, and went back towards the house where he had left the deceased, and when he was in about one hundred and twenty-five yards of the house, his mule stumbled and threw him; that when he arose he saw the deceased coming towards him from the house; that he then went towards the deceased, having his gun in his hand, and told the deceased to stand back. That the mother of the deceased was between him and the deceased and seemed to be trying to keep the deceased back. That the deceased was angry, and when he (defendant) got within about thirty yards of the deceased, he again told the deceased to stand back, and that defendant then retreated about six steps to the road, where he stopped and again told the deceased to stand back; that the deceased did not stop but finally put his mother aside and continued coming, and that he then shot the deceased. He further testified that, at the point from which he shot, the road was open on all sides, and that, when he fired, he had gotten back into the road and was standing there and made no effort to retreat any further. He further testified that, when he shot the deceased, the deceased was standing in George Hughes' yard, within the yard enclosure, about ten or fifteen steps from the house and about twenty-five steps from the defendant, and that the only weapon the deceased had was a pair of brass knucks.

Under the foregoing evidence, there certainly was nothing that would have caused a reasonably prudent man to honestly believe that he was in imminent danger of being killed, or that he would suffer grievous bodily harm at the hands of the deceased, twenty-five steps away and armed only with a pair of brass knucks. Moreover, the way was open to the defendant to have avoided taking of life by retreat. Neither was there any tendency of the evidence to rebut the tendency of the evidence that defendant sought the opportunity to kill the deceased.

[Dunn *alias* Hopkins v. The State.]

We are clear in our conclusion that the court committed no error in sustaining the objection of the State to the evidence sought to be obtained by the defendant from the witnesses, Bessie Hughes and Andy Williams. The ruling of the court, with reference to the evidence sought to be elicited from the witness Bessie Hughes, may be further justified upon the principle that the particulars of a previous difficulty are incompetent as evidence. *Harkness' case,* 129 Ala. 71; *Willingham's case,* 130 Ala. 35; *Gordon's case,* 36 Sou. Rep. 1009.

The evidence which the defendant attempted to elicit from Dr. Upchurch, as to the physical condition of the defendant, stands in the same category with that of previous threats, and must have the same predicate for its admission before it is relevant.

Charge numbered one, given at the request of the State, is substantially a copy of the definition of the terms, "Deliberate and premeditated," as laid down in the case of *Daughdrill v. State,* 113 Ala. 32. We think the definition given the words "Deliberate and premeditated," in the case above cited, is fully supported in the cases of *Cleveland v. State,* 86 Ala. 1; *Smith v. State,* 68 Ala. 424; *Mitchell v. State,* 60 Ala. 26. And in other States which have statutes containing the words "Deliberate and premeditated," as descriptive of murder in the first degree, we have found decisions which sustain the view, that the killing will be willful, deliberate, and premeditated in all cases where an intent to kill exists before the act, of which intent the mind is fully conscious, and the accused thereafter executes the intent by killing, without regard to the length of time intervening the intent and the act.—*State v. Beatty,* 51 W. Va. 232; *McAdams v. State,* 25 Ark. 405; *Whiteford v. Commonwealth,* 6 Rand, (Va.) 721; 18 Am. Dec. 771; *Donnelly v. State,* 26 N. J. Law, 463, text 510; *State v. Dowden,* 118 N. C. 1145, text 1153; *Hawthorn v. State,* 58 Miss. 778. There was no error in giving charge numbered 1.

Charge numbered 2, given at the request of the State, has been many times approved by this Court, and the court committed no error in giving the charge.—*Will-*

*ins' case,* 98 Ala. 1; *Miller's case,* 107 Ala. 40; *Kilgore's case,* 124 Ala. 24; *Bondurant's case,* 125 Ala. 31.

We have considered all of the grounds of error assigned, and not having found any error in the record, the judgment of the circuit court must be affirmed.

Affirmed.

MCCLELLAN, C.J., HARALSON and DOWDELL, J.J., concurring.


### *Indictment for Murder.*

