# Black *v.* The State.

## *Murder.*

(Decided June 4, 1912. 59 South. 692.)

1. *Homicide; Instructions; Self Defense.*—Where the evidence raised the issue of self defense in a prosecution for homicide, the defendant was entitled to have the jury instructed that he could act on the appearance of things to him at the time, taken in the light of any threats the evidence showed that the deceased had made against him, the charge being hypothesized upon the necessary ingredients of self defense.

2. *Same.*—The law gives a person the same right to use such force as may be reasonably necessary, under the circumstances by which he is surrounded, to protect himself from felonious assault or great bodily harm, as it does to prevent his life being taken.

3. *Same.*—It is not necessary to justify the use of a deadly weapon that the danger be actual, it being enough that it be apparent danger, such an appearance as would induce a reasonable person in the defendant's position to believe that he was in immediate danger of great bodily harm, and upon such appearance, one may act with safety though it should afterwards appear that the indications on which he acted were fallacious, and that he was in no actual peril, the rule being what would a reasonable person, a person of ordinary caution, judgment and observation, in the position of defendant, seeing what he saw, and knowing what he knew, honestly believe from the situation and surroundings; if such reasonable person so placed would have been justified in believing himself in imminent danger, then defendant would have been justified in believing himself in such peril, and in acting upon such appearance.

4. *Same; Evidence; Character of Deceased.*—Under the rule that it is not permissible to show a particular act or particular habit for the purpose of affecting character, it was not permissible to show that the deceased was in the habit of taking morphine.

5. *Same; Condition of Mind.*—Evidence to show the condition of the mind of deceased must be limited as to time so as to show a connection with the time of the difficulty as s⌐edding light on his mental condition at that time.

6. *Charge of Court; Argumentative.*—Although a charge may assert a correct proposition of law, if it is argumentative or covered by charges already given in writing, the trial court will not be put in error for refusing it.

APPEAL from Limestone Circuit Court.

Heard before Hon. D. W. SPEAKE.

George Black was indicted for murder in the first degree and convicted of manslaughter, and he appeals. Reversed and remanded.

The facts sufficiently appear from the opinion. The following are the charges discussed in the opinion:

(4) "It is not necessary, under the evidence in this case, that the defendant should have been actually in danger of death or great bodily harm at the time he killed the deceased, or that retreating would have really increased his peril, in order for him to have been justified in shooting the deceased. He had the right to act on the appearance of same, taken in the light of any threats that the evidence proves the deceased to have made against the defendant. If the circumstances attending the killing are such as to justify a reasonable belief that he was in danger of great bodily harm or death, and that he could not have retreated without adding to his peril, and he honestly believed such to be the case, then he had a right to shoot the deceased in his own defense, although, as a matter of fact, he was not in actual danger, and retreat would not have endangered his personal safety; and, if the jury believe that the defendant acted under such conditions and circumstances as above set out, the burden of showing that he was not free from fault in bringing on the difficulty was on the state, and, if not shown, they could acquit the defendant."

[Black v. The State.]

(10) "The law gives a person the same right to use such force as may be reasonably necessary, under the circumstances by which he is surrounded, to protect himself from great bodily harm as it does to prevent his life being taken. He may excusably use this necessary force to save himself from any felonious assault."

(32) "The bare fear of the commission of the offense, to prevent which the defendant used a deadly weapon, is not sufficient to justify it; but the circumstances must be sufficient to excite the fears of a reasonable man, and the attacking party must have acted under the influence of such fears alone. It is not necessary, however, to justify the use of a deadly weapon, that the danger be actual. It is enough that it be apparent danger; such an appearance as will induce a reasonable person in defendant's position to believe that he was in immediate danger of great bodily harm. Upon such appearances the party may act with safety; nor will he be held accountable, though it would afterwards appear that the indication upon which he acted was wholly fallacious, and that he was in no actual peril. The rule in such a case is this: What would a reasonable person, a person of ordinary caution, judgment, and observation, in the position of the defendant, seeing what he saw and knowing what he knew, honestly believe from this situation and these surroundings? If such reasonable person, so placed, would have been justified in believing himself in imminent danger, then the defendant would be justified in believing himself in such peril, and in acting upon such appearance."

(34) "I charge you, gentlemen of the jury, that if a man has been threatened by another, and he honestly believes, and there are reasonable grounds for him to believe, that the deceased intended to take his life, or to inflict upon him great bodily harm, then such person

would have a right to arm himself for self-protection, provided his purpose was merely to defend himself from an assault or an attack by such person so threatening him. And I further charge you that, under such circumstances, a person thus threatened would have the right to go even to places where the party who had threatened his life then was, if such going was upon or for the purpose of attending to business. In other words, a person thus threatened does not have to abandon his business and secrete himself, but has the right, under the circumstances above set forth, to arm himself for self-protction and go where his business calls him, even though it may be that the person who threatens his life is at that particular place."

W. R. WALKER, and WALL & RANKIN, for appellant. The charges refused to the defendant were erroneously refused for the reasons and on the authorities stated below. "Though defendant may have been in a place of safety and knew it and knew the person was at a point where he went, and was likely to assault him, he may, nevertheless, leave such place of safety and not be deprived of the right of self-dfense."—*Montgomry's Case,* 160 Ala. 7. "If a person has reason to believe he is in danger of death or grievous bodily harm at the hands of another he has the right to arm himself for self-protection."—*Phillip's Case,* 161 Ala. 60; *Scott's Case,* 113 Ala. 64; *Dooley's Case,* 89 Ala. 90; *Davenport's Case,* 85 Ala. 336; *Gourko v. U. S.,* 153 U. S. 183; *Sylvester's Case,* 35 South. Rep. (Fla.), 149; *Thompson v. U. S.,* 155 U. S. 278, 283; *Allen v. U. S.,* 157 U. S. 680; *Wallace v. U. C.,* 162 U. S. 474; *State v. Gardner,* 2 L. R. A. (N. S.) 49 and note; *Bohannan's Case,* 8 Am. Rep. 474. "Where a person's life or limb has been threatened by another he has the right to arm himself to protect him-

self from anticipated injury and has the right to go even to places where the threatening party is for the purpose of attending to business."—*Montgomery's Case*, 160 Ala. 7; *Gourko v. U. S.*, 153 U. S. 183; *Sylvester's Case*, 35 South. Rep. (Fla.) 149; *Thompson v. U. S.*, 155 U. S. 278; *Allen v. U. S.*, 157 U. S. 680; *Wallace v. U. S.*, 162 U. S. 474; *Bohannan's Case*, 8 Am. Rep. 474; Acts of Ala. 1909, 258. "Where an assault is manifestly felonious in its purpose and forcible in its nature the party attacked is under no obligation to retreat, but if the other constituent elements of self-defense be present may stand his ground and kill his adversary."—*Hutcheson's Case*, 170 Ala. 29; *Dolan's Case*, 81 Ala. 11, 15; *Storey's Case*, 71 Ala. 329, 336-7; *DeArman's Case*, 71 Ala. 351, 360; *Suell v. Derricott*, 161 Ala. 259, 268-9; *Scheuerman v. Scharfenberg*, 163 Ala. 337, 343. "Where the fatal blow is given in consequence of passion suddenly engendered by menaced assault under such circumstances as reasonably cause the defendant to believe, and he does believe, that he would be presently assaulted with a deadly weapon, the homicide is reduced to manslaughter in the first degree."—*Mitchell's Case*, 60 Ala. 26, 32; *Ex parte Sloan*, 95 Ala. 22; *Judge's Case*, 58 Ala. 406; 2 Bishop's New Crim. Law, Sec. 703, Sub-div. 3; 1 Bishop's New Crim. Law, Sec. 872; *Commonwealth v. Webster*, 5 Cush. 295, 52 Am. D. 711; Wharton on Homicide (3 Ed.), Sec. 175; 1 Russell on Crimes (10 Ed.), 783-84; 2 Roscoe's Crim. Ev. (8 Ed.), top pages 966-969.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. Particular acts are not competent as affecting character.— *Jones v. The State*, 76 Ala. 9; *Hussey v. The State*, 87 Ala. 121; *Andress v. The State*, 109 Ala. 14. Questions

which may be answered in such way as to bring self serving declarations into the evidence, are properly denied.—*Spivey v. The State* 26 Ala. 90; *Billingsley v. The State,* 68 Ala. 486; *Williams v. The State,* 105 Ala. 96; *Ferguson v. The State,* 134 Ala. 63. Charge 14 submits a question of law to the jury.—*McGhee v. The State,* in MSS. Counsel discuss the other charges refused to the defendant, but without citation of authority.

PELHAM, J.—The defendant was indicted and tried for murder in the first degree and convicted of manslaughter.

So far as necessary to a proper understanding of the trial court's rulings and the opinion in the case, the following summary of the substance of the evidence will be sufficient: Coy Hardy, a young son of the deceased, was in charge of and in his father's wagon, which was standing on one of the streets in the town of Athens, near the curbing to the pavement, in front of a store, when the defendant drove up to the wagon, and the mule hitched to his buggy commenced biting the end of a plank used for a seat of the deceased's wagon. An altercation arose between young Hardy and the defendant in consequence of the mule's biting the seat plank, in which more or less bad language was used by both parties. The deceased was not present at this time, but when he subsequently came to the wagon the boy informed his father of what had taken place, and stated that the defendant had cursed him; whereupon deceased and the defendant got into a dispute over the matter. The defendant then drove across the square and hitched his mule to the courthouse fence, and, after going around to several people endeavoring to procure a pistol, secured one, after which he went in the direction of

the deceased, who was standing near the back end of his wagon that was located in about the same place it had been since the first dispute arose, and, after the defendant passed by deceased, and within a few feet of him, the defendant turned and shot the deceased.

It was the contention on the part of the state, and the tendencies of the state's evidence went to prove, that no threats were made against the defendant by the deceased or his son when the altercation first came up, and before the defendant drove off, or at any other time, and that the defendant armed himself for aggressive purposes, and that when he passed by the deceased just before the shooting occurred the deceased did not say or do anything to cause the defendant to turn and shoot him, and that the deceased, at the time he was shot, was standing still, unarmed, and making no demonstration or threat against the defendant. The defendant, on the other hand, contended, and there was evidence tending to prove his contention, that during the altercation between the defendant and the deceased, before the defendant drove off and hitched his mule to the courthouse fence, the deceased threatened the life of the defendant; that deceased followed the defendant's buggy when he drove off, and that after defendant left his buggy with the mule hitched to it the deceased went over to it and got into it, and afterwards went around the streets in the vicinity of the courthouse square exhibiting a long knife of the dirk kind, threatening to take the life of defendant; that defendant, because of his life having been threatened, secured a pistol for self-protection, and at the time he went in the direction of and passed dceased he was going to a store to get a package of goods to take home that he had previously purchased; that just as the defendant had passed the deceased, without saying or doing anything, the deceased called

to and stopped the defendant, and, after a few words had passed between them, that the deceased threatened the defendant's life, and at the same time, and while within a few feet of him, advanced upon the defendant with his hand raised and armed with a dirk knife, whereupon the defendant shot the deceased. There was evidence, then, tending to show that the defendant acted in self-defense.

The refused charges take up more than 10 pages of the transcript; and when we take into consideration the practice as it exists under our system, where the charges are carefully prepared at the leisure of learned counsel, or, as is more often the case, copied from the mass of charges that have been passed upon in this class of cases, and presented to the judge at a time when he has no opportunity to give them careful analysis, it is not unreasonable to suppose, or entirely beyond expectation to find, that out of such a large number refused errors will be made.

The first refused charge set out in the record, and numbered 4, is substantially the same charge that was approved by the Supreme Court in the cases of *Bluitt v. State,* 161 Ala. 14, 49 South. 854, and *Bluitt v. State,* 151 Ala. 51, 44 South. 84; and, while portions of this charge are substantially covered by the given charges, parts of it are not so covered, notably the familiar principle that the defendant has the right to act on the appearance of things at the time, taken in the light of any threats the evidence proves the deceased to have made against the defendant.

Refused charge 10 is the same charge that was passed upon in the case of *Twitty v. State,* 168 Ala. 59, 53 South. 308, as a charge that should have been given. It is a general proposition of law that was applicable to this case, and should have been given.

Charge No. 32 is also copied from *Twitty's Case, supra,* and meets and corrects the fault pointed out in the charge as it appears in that case.

The principle of law contained in refused charge No. 34, grounded upon the opinion of the court in the case of *Montgomery v. State,* 160 Ala. 7, 49 South. 902, is correctly stated; but the charge as written is argumentative and practically covered by given charge B.

What we have said covers the principal propositions involved in the charges, and should be a sufficient guide to the court, on another trial, in the matter of the refused charges, without the necessity of taking them all up in detail and entering into a lengthy discussion of principles of law that have been treated so often as to render repetition of no practical purpose.

The rulings of the court on the evidence were free from prejudicial error. It was shown, without conflict or objection, that the deceased had been drinking on the day of the difficulty; and, if the court was in error in sustaining objections seeking to elicit this information from the sons of the deceased, it was without injury. The questions asked the witnesses Johnson and Legg called for self-serving declarations, and objections were properly sustained to the questions.

If the purpose of showing that the deceased was in the habit of taking morphine was to affect his character, the evidence was not admissible; for it is not permissible to show a particular habit or particular acts of character for that purpose. If the object was to show the condition of the mind of the deceased at the time of the difficulty, then the proof must be limited to a time that would show a connection with the time of the difficulty and shed light on the mental condition of the deceased at that time.

For the errors pointed out, the case must be reversed. Reversed and remanded.