(128 So. 461)

### THOMPSON v. STATE.

-4 Div. 522.

Court of Appeals of Alabama.

May 20, 1930.

Sollie & Sollie, of Ozark, and J. C. Fleming, of Elba, for appellant.

Charlie C. McCall, Atty. Gen., and Merwin T. Koonce, Asst. Atty. Gen., for the State.

RICE, J.

Appellant stabbed her husband, Leary Thompson, in the heart, and from this wound he died. She was indicted for murder in the first degree, tried and convicted of murder in the second degree. Her punishment was fixed at imprisonment in the penitentiary for a term of ten years.

The "setting" of the tragedy, which gives rise to this whole proceeding, including this appeal, is substantially as follows:

They—the colored population of the locality —were having, or to have, a "Christmas tree" in the church in "Methodist Bottom," in the town of Enterprise, on Christmas night, or perhaps it was Christmas Eve night, in the year of our Lord 1926. Minnie Lee (the appellant) and Leary, her husband, whose matrimonial bark had been sailing rather turbulent seas since its launching in January next preceding the December of Leary's death, were living at the time with Minnie Lee's mother in "Sessions Quarters," in another part of the town. Late in the afternoon, or early in the evening, of the fateful day, Leary left his home and wife to do some errands, and, according to the testimony, was to meet his wife at the Christmas tree at the church in "Methodist Bottom," say, at perhaps 7 or 7:30 o'clock.

Bessie Ward, with her daughters, among the number of whom was Irene, lived near this church—very near. At about the time Leary (the deceased) should have been at the church, according to his agreement, or instructions, as shown by the testimony, he was at the home of Bessie Ward, in a room with Irene, Josephine (whom it is not necessary to identify further) and Florence (Id.), and perhaps some others. The victrola was playing, danc-

ing was going on, and, for the moment, as it were, the cares of married life had been put aside by Leary. Of him, at the time, it seems fair to remark that, beyond the occupants of the room where he found himself, he was in the act of "the world forgetting," though he had not been altogether "by the world forgot." Because Minnie Lee called from the darkness outside Bessie's house. The testimony is in some dispute as to the manner of Minnie Lee's calling, or for whom she called, or what she said, etc. At any rate, the "party," if we may so designate it, of which Leary was a peaceful, and apparently very pleased, member, came to a sudden close. Much, we believe all, of the testimony was to the effect that Minnie Lee called for Irene, shown by the testimony to have been throughout, or at least over a large part of, the voyage of Minnie Lee and Leary on the sea of matrimony, both the Scylla and Charybdis of said venture. When Irene was called, Leary came. And, going out of the house into the darkness, no testimony other than Minnie Lee's gave account of what occurred between her and Leary from the time they met just at the door steps of Bessie's home until Leary staggered into the church house, near, fatally wounded.

Minnie Lee testified, and offered other testimony for the purpose of corroborating her statements, that she went to Bessie's house, not looking for Leary, but to carry a message to Irene, sent by a mutual friend, etc. Minnie Lee says she stabbed Leary, but that she did it in self-defense—that he was choking, beating, abusing, etc., her at the time, etc. Another of her pleas was that she was not guilty by reason of insanity, etc.

There were a number of exceptions reserved to rulings made by the trial court on the taking of testimony. Each such ruling has been examined by us, but we are not of the opinion that there was error of a nature prejudicial to any right of appellant, in any one of same. Nothing worthy of detailed mention seems to be involved in any of said rulings.

Appellant's requested, refused, written charge 1 seems to have been approved by both this court and the Supreme Court. Black v. State, 5 Ala. App. 87, 59 So. 692. The same thing may be said of her requested, refused charge 2. Suttle v. State, 19 Ala. App. 198, 96 So. 90.

Appellant's written, requested, refused charge 4 has been approved by the Supreme Court. Smith v. State, 92 Ala. 30, 9 So. 408.

Appellant's written, requested, refused charge 7 was approved by the Supreme Court in Chaney v. State, 178 Ala. 44, 59 So. 604.

It may be that appellant's written, requested, refused charge 9 is approved by implication in Edmonds v. State, 16 Ala. App. 157, 75 So. 873. At any rate, we hold it embodies a correct statement of a valid principle of the criminal law.

Appellant's written, requested, refused charge 10 has been approved by the Supreme Court in Reynolds v. State, 154 Ala. 14, 45 So. 894.

Appellant's written, requested, refused charge 11 states correctly a valid principle of the criminal law as it was declared in Barker v. State, 6 Ala. App. 1, 60 So. 457.

Appellant's written, requested, refused charge 12 was approved by the Supreme Court in Bailey v. State, 168 Ala. 4, 53 So. 296, 390.

Appellant's written, requested, refused charge 14 seems to be a correct statement of a valid principle of law. McDonald v. State, 165 Ala. 85, 51 So. 629.

Appellant's written, requested, refused charge 15 seems to have impliedly had the approval of this court in Johnson v. State, 15 Ala. App. 298, 73 So. 210. At any rate, it states, in our opinion, correctly, a valid principle of the criminal law of our state.

Appellant's written, requested, refused charge 16 has been approved by the Supreme Court in Hale v. State, 122 Ala. 85, 26 So. 236.

Appellant's written, requested, refused charge 18 has been approved by both the Supreme Court and this court. Baker v. State, 19 Ala. App. 437, 97 So. 901.

Appellant's written, requested, refused charge 21 has been approved by both the Supreme Court and this court. Henderson v. State, 11 Ala. App. 37, 65 So. 721.

Appellant's written, requested, refused charge 22 has been approved by the Supreme Court in Louisville & N. R. R. Co. v. Cowherd, 120 Ala. 51, 23 So. 793.

Appellant's written, requested, refused charge 23 has been approved by the Supreme Court. Bryant v. State, 116 Ala. 445, 23 So. 40.

Appellant's written, requested, refused charge 24 has been approved by the Supreme Court. Martin v. State, 90 Ala. 602, 8 So. 858, 24 Am. St. Rep. 844.

Appellant's written, requested, refused charge 26 was abstract, so far as this case was concerned. There was, of course, no duty to give it.

Appellant's written, requested, refused charge 29 was also abstract.

Appellant's written, requested, refused charge 31 is elliptical, but, if it be said that the ellipsis is self-correcting, by virtue of its context, the charge could be said to have been approved heretofore. Teel v. State, 18 Ala. App. 405, 92 So. 518.

Appellant's written, requested, refused charge 32 seems to contain a correct statement of the law, not inapplicable to this case. Camillieri v. State, 19 Ala. App. 521, 99 So. 66.

■ Appellant's written, requested, refused charge 35 has *not*, as we read the cases, been approved by the authorities cited by appellant's able and prolix counsel, in their brief. Boswell v. State, 63 Ala. 307, 35 Am. Rep. 20. In fact, we are of the opinion that it states an incorrect principle of law. The "irresistible impulse," sought to be asserted as a defense therein, must, as we understand it, and hold, be induced by a "mental disease," etc.

Appellant's written, requested, refused charge '40 was approved by the Supreme Court in Bondurant v. State, 125 Ala. 31, 27 So. 775.

Appellant's written, requested, refused charge 43 was approved by this court in Thomas v. State, 18 Ala. App. 493, 93 So. 287.

Appellant's written, requested, refused charge 46 seems to state the law correctly. At any rate, we hold it does. Boswell v. State, supra.

Appellant's written, requested, refused charge 47 is abstract in this case. There are perhaps other reasons justifying its refusal.

Appellant's written, requested, refused charge 49 states a correct proposition of law. Hale v. State, 10 Ala. App. 22, 64 So. 530. So of her written, requested, refused charge 50. Crumley v. State, 18 Ala. App. 105, 89 So. 847. And of her written, requested, refused charge 51. Boswell v. State, supra.

The same may be said of her written, requested, refused charge 52. Terry v. State, 17 Ala. App. 527, 86 So. 127.

Appellant's written, requested, refused charge 53 seems to, and we hold it does, state the law correctly. Ex parte Johnson, 183 Ala. 88, 63 So. 73. And so of her written, requested, refused charge 54. Robinson v. State, 155 Ala. 67, 45 So. 916.

We have now been at pains to go through, carefully, critically, and studiously, all the thirty-nine written charges requested by, and refused to, appellant, though we have seen fit to "list" only those discussed by appellant's counsel in their brief filed here. We are reminded of the remarks of the late, lamented Judge Pelham, of this court, in the opinion in the case of Black v. State, 5 Ala. App. 87, 59 So. 692, 694, to wit: "The refused charges take up more than 10 pages [here, a little less than 9] of the transcript; and when we take into consideration the practice as it exists under our system, where the charges are carefully prepared at the leisure of learned counsel, or, as is more often the case, copied from the mass of charges that have been passed upon in this class of cases, and presented to the judge at a time when he has no opportunity to give them careful analysis, it is not unreasonable to suppose, or entirely beyond expectation to find, that out of such a large number refused errors will be made."

And the learned judge, while writing the above, *might*, it seems to us, have gone on and added a word of caution to *nisi prius* judges, to the effect that even though, and when, a *defendant's* requested written charge, in a *criminal* case, was deemed by them to have some more or less harmless vice, such as being abstract, or merely a repetition, in perhaps immaterially varied language, of the same principle already given to the jury in either the oral charge of the court, or some other written charge given at the defendant's request, much the safer, and, practically, an altogether harmless, practice would be to go on and *give* the charge. In this way the number of lawyers, if there are any such, who make a habit of requesting an unreasonable number of written charges on behalf of defendants, in criminal cases, not so much for the purpose of making sure the law governing the determination of their client's cause is properly outlined to the jury, as for the purpose of catching the trial judge in error—for purposes of appeal after a possible conviction—would be materially reduced.

■ But, however that may be, in this case we have read, and reread, very carefully, every word of the ten and one-half pages (on the transcript paper) of the trial court's careful and comprehensive oral charge, in connection with the nineteen written charges, a number of them very lengthy, given at appellant's request. When each of the thirty-nine written, refused charges is considered in the light of the charges *given*, it is found that the principle of law contained in same, if not abstract, misleading, or incorrect (and a number of them, some listed, and *some not* listed, above, have one or more of these vices), has been fairly and substantially given to the jury in some other way. The fact that we have indicated hereinabove that a number of the refused charges have been heretofore *approved* by either the Supreme Court, or this court, or both, is not an indication that we are of the opinion that there was error in refusing to give same, in *this* case. Because, after much studious "checking" and "rechecking" of the written charges *given* and *refused*, and consideration of them in connection with each other, and the oral charge of the court, we think and hold, that every pertinent principle of law governing any issue, and all the issues, in the case, was fully, fairly, and correctly given to the jury, and that there was no prejudicial error in refusing any one of the thirty-nine "written, requested, refused," charges appearing in the record.

The case, so far as we can ascertain after much careful study of the record, was fairly and correctly tried, and the judgment of conviction ought to be, and is hereby, affirmed.

Affirmed.