110 So.2d 319

James A. PETTY

v.

STATE.

4 Div. 363.

Court of Appeals of Alabama.

Dec. 2, 1958.

Rehearing Denied Feb. 17, 1959.

Ben H. Lightfoot, Luverne, for appellant.

John Patterson, Atty. Gen., and Wm. C. Younger, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

This appellant, James A. Petty, was indicted for murder in the first degree for the death of Virgil S. Sasser.

His trial resulted in a verdict and judgment of guilty of manslaughter in the first degree.

Appellant's motion for a new trial was overruled, and an appeal was perfected to this court.

The evidence presented in the court below tended to show that at the time of the killing the appellant was a sergeant in the army stationed at Fort Benning, Georgia, and that his wife and children were residing in Crenshaw County, Alabama.

On the day of the killing the appellant had driven to Crenshaw County, we gather unexpectedly.

Not finding his wife at home, he began a search for her. His brother-in-law, Coston Lynton, volunteered to take him where his wife was. They twice went to Berry's Place, but the appellant did not find his wife on these visits. On the third visit however the appellant went through a room back of the bar, and opened a door into another room. This room turned out to be a bed room. There the appellant found his wife on a bed with the deceased, she being unclothed from the waist down.

As to what happened then we excerpt the following from the testimony of Mrs. Petty, who testified as a witness for the defense:

"Q. All right, now, when your husband, James Petty, walked in that door that night what was the first thing that was said or done? A. Well, I was lying facing the door—

"Q. You were facing the door and you saw him first? A. I saw him and it scared me, it like to have scared me to death, and I hollered, 'James.'

"Q. You hollered, 'James?' A. Uh huh.

"Q. All right, what did Sasser say, if anything, at that time? A. Well, he was facing me and he turned over and he said, 'Shoot,'—and he mentioned the gun, and—

"Q. Did he mention his gun? A. Yeah, uh huh.

"Q. Well, did Sam Sasser have a gun there? A. Yes, sir, we had it in there on the bed with us.

"Q. He had a gun? A. We did have a gun.

"Q. And he mentioned something about his gun? A. Uh huh.

"Q. Well, then what did James Petty do at that time? A. He was just standing there, he didn't say a word.

"Q. Well, did he start shooting? A. Yes, he started shooting."

According to the appellant, when he discovered his wife and Sasser on the bed he stood there "a little bit," he did not know just how long. His wife called his name, "and this other man hollered, 'where is my gun.' There was a gun laying on the bed at the bed where I was standing."

The appellant testified he did not remember anything that happened after that, until his wife asked him to do something for her, as she was bleeding.

It might be well to note here that no weapon was found in the bed room after the shooting, nor was it shown that any one had removed a pistol therefrom after the shooting.

Mr. Ira Thomas, then a police officer for the City of Luverne, testified that he arrested the appellant at hospital in Luverne. At that time the appellant stated that he had killed Sasser, and was ready to go. The appellant at this time gave Mr. Thomas a pistol which he obtained from the front seat of an automobile. Two shots had been fired from the pistol.

Some nine character witnesses testified to the appellant's good reputation in general, and also his good reputation for peace and quiet.

William A. Butler was presented as a witness by the State.

Among other things Butler testified that he was in Berry's Place at the time of appellant's visits. He further testified that when the appellant started through the door that could lead to the bed room, he and Coston Lynton left Berry's Place and walked a short distance away. The witness heard two shots fired, one shot being fired as they were leaving the building. Coston Lynton reentered Berry's Place first, and called to the witness. The Solicitor then asked this witness how long it was before he went to the scene after Lynton, and he stated it was not over half a minute.

The Solicitor then asked the witness if "it was time enough to dress a dead man?"

To this question the defense interposed a general objection only.

The objection was overruled, and the witness answered "No Sir."

Counsel for appellant argues that this ruling by the court constitutes reversible error in that it permitted Butler to give opinion evidence, i.e. how long it would take to dress a dead man, when he had not been shown to be qualified to give such opinion.

■ Technically, the objection should have been sustained. However, only a general objection was interposed, and it is not reversible error to overrule a general objection if the evidence sought is admissible under any theory, for unless the objection particularizes the defect in the question neither the interrogator nor the court is informed of a defect that may be latent therein, and no opportunity is afforded to correct such defect by reframing the question, or supplying additional evidence. Head v. State, 35 Ala.App. 71, 44 So.2d 441.

■ Evidence as to the scene of a crime, as to objects found thereat, and as to the condition of the body, is admissible and relevant evidence, when reasonably proximate to the scene in time and location. Busbee v. State, 36 Ala.App. 701, 63 So.2d 290.

■■ The ultimate end of the evidence sought by the Solicitor by the question posed was the state of dress, or undress of the deceased at the time of the shooting. Such evidence was relevant and admissible. We therefore do not think the lower court should be cast in error because of its ruling in this instance, since only a general objection was interposed.

Further, Butler had testified that the deceased was fully clothed when he entered the bed room after the shooting. Photographs of the deceased taken at the scene on the night of the shooting show him to be fully clothed. Butler testified that the photographs depicted the scene exactly as it was when he first entered the bed room after the shooting. Neither the appellant nor his wife gave any testimony, nor was any sought from either touching on the state of dress of the deceased at the time of the shooting. In other words, the state of dress of the deceased was not made an issue in the trial below. The evidence presented by the State would tend to show that he was dressed at the time. We cannot see therefore that the appellant was probably injured in any substantial right by the ruling complained of. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

Counsel for appellant also argues that the lower court erred in overruling his objection to a question propounded to State's witness M. C. Turner, an undertaker, and coroner of Crenshaw County as to whether the bullet wound received by deceased was in his opinion sufficient to have caused death.

■ The record shows that this question was not answered by the witness. There is therefore nothing before us for review in this instance.

■ Charge 1 requested by the appellant, being affirmative in nature, was properly refused under the developed evidence.

■ Refused charges 2, 3, 9, 10 and 11, applying to murder were rendered abstract by the verdict of manslaughter.

■ Charges 4, 5, and 7 were in our opinion incorrect statements of the legal principles involved in the degree of proof sufficient to sustain self defense, and therefore misleading, and properly refused.

All of these charges begin with the statement that the burden of proof is upon the State to prove to the jury's satisfaction, beyond a reasonable doubt, that the defendant was at fault on bringing on the difficulty, and unless the State has so convinced the jury they should find the defendant not guilty, "if from the evidence you are reasonably satisfied" that the other elements of self defense, (said elements being set forth in the charges) were present.

The effect of these charges was to place upon the appellant a burden greater than required, i.e., to *reasonably satisfy* the jury from the evidence that he could not retreat without danger of suffering death, or grievous bodily harm, and that he was in imminent peril, real or apparent, of suffering death or grievous bodily harm.

■ Despite cases in our reports seeming to state a different rule (see Robinson v. State, 108 Ala. 14, 18 So. 732; Ragsdale v. State, 12 Ala.App. 1, 67 So. 783; McBryde v. State, 156 Ala. 44, 47 So. 302), it is now definitely settled that the rule as to the burden resting on a defendant where he relies on self defense as a justification is that he must only offer such evidence as will, when considered with the whole evidence, generate in the minds of the jury a reasonable doubt of his guilt. Baker v. State, 19 Ala.App. 432, 98 So. 213; Barbaree v. State, 24 Ala.App. 127, 130 So. 903; Lee v. State, 24 Ala.App. 168, 132 So. 61.

■ A court is justified in refusing a charge where it does not speak "in the correct and appropriate terms of the law." Hudson v. State, 217 Ala. 479, 116 So. 800, 802; Bush v. State, 211 Ala. 1, 100 So. 312.

■ Charge 8 was substantially covered in the oral charge of the court, and

in charges 6 and 12 given at appellant's request.

Further, we are unwilling to cast error upon the trial court in the refusal of this charge for the following reasons.

A charge substantially the same as appellant's requested charge 8 was first considered in Twitty v. State, 168 Ala. 59, 53 So. 308. The Supreme Court held that the charge was properly refused since it substituted "supposed" for "bona fide" belief from the situation and surroundings in which the accused was placed.

In Black v. State, 5 Ala.App. 87, 59 So. 692, 694, the charge was before the Court of Appeals as charge 32 in said case. It was identical with the charge considered in the Twitty case, supra, except that "suppose" was changd to "honestly believe" from the situation. In connection with this charge, Pelham, J., wrote: "Charge No. 32 is also copied from Twitty's Case, supra, and meets and corrects the fault pointed out in the charge as it appears in that case."

A charge identical with charge 32 in the Black case, supra, was again considered by the Court of Appeals in Holland v. State, 24 Ala.App. 199, 132 So. 601, 604. In reference to the charge, which was refused, the court observed: "Refused charge 15 was approved in haec verba by this court in Black v. State, 5 Ala.App. 87, 59 So. 692. See, also, Twitty v. State, 168 Ala. 59, 53 So. 308."

We consider the observation of the Supreme Court in the Twitty case as to this charge as nothing more than pointing out an obvious defect. The court merely held that such defect justified the refusal of the charge in and of itself. We do not interpret the Twitty case as approving the charge, but only as pointing out one defect therein.

It must be admitted that this court took a contrary view when the charge, free of the defect pointed out in the Twitty case was before it in the Black and Holland cases, supra.

However, it is our conclusion that charge 8 is so obviously faulty in many respects, that we must depart from the views concerning it expressed in the Black and Holland cases, supra.

In the first place, charge 8 omits all reference to duty to retreat. This omission would justify its refusal. King v. State, 233 Ala. 198, 171 So. 254; Danley v. State, 27 Ala.App. 402, 173 So. 648; Early v. State, 31 Ala.App. 488, 18 So.2d 873; Seekers v. State, 35 Ala.App. 40, 44 So.2d 628; Freeman v. State, 37 Ala.App. 623, 74 So. 2d 513.

Refusal of the charge is further justified by its omission of any reference to freedom from fault in bringing on the difficulty. Ford v. State, 33 Ala.App. 134, 30 So. 2d 582; Cauley v. State, 33 Ala.App. 557, 36 So.2d 347; Coleman v. State, 37 Ala. App. 406, 69 So.2d 481.

Further, the charge states an abstract principle of law, and is not based on the evidence, nor does it make any reference to the effect of the principle set forth to the issues in the case. It is never error to refuse an instruction in this form. Carroll v. State, 36 Ala.App. 59, 52 So.2d 171, and cases cited.

From our examination of this record we conclude that it is free of error probably injurious to the substantial rights of this appellant, and it is due to be affirmed. It is so ordered.

Affirmed.

On Application for Rehearing

HARWOOD, Presiding Judge.

In his brief in support of appellant's application for a rehearing counsel requests that we write to the court's refusal of appellant's refused charge 14, a matter we pretermitted in our original opinion, being doubtful that the point justified a discussion. We are however glad to comply with counsel's request in order to afford a full review of all points raised.

Refused charge 14 is as follows:

"A probability from the evidence of the defendant's innocence is a just foundation for a reasonable doubt of his guilt. If after consideration of the entire evidence, you find that the defendant is probably innocent to the extent of causing a reasonable doubt in your minds of his guilt, you should find him not guilty."

The principle sought to be enunciated in charge 14, supra, is contained in its first sentence that: "A probability from the evidence of defendant's innocence is a just foundation for a reasonable doubt of his guilt." The remaining portion of this charge is but a restatement in effect of the first sentence.

We pretermit the omission of the qualifying word "reasonable" before probability, though this in itself would make the charge defective.

In Carroll v. State, 36 Ala.App. 59, 52 So.2d 171, 173, the late Presiding Judge Carr considered the refusal by the lower court of the following charge:

"26. The Court charges the jury that if there is, from the evidence, a reasonable probability of defendant's innocence, the jury should acquit the defendant."

In holding that the refusal of this charge was not error, Judge Carr wrote:

"We find that charge 26 found approval in the following cases: Huguley v. State, 4 Ala.App. 29, 58 So. 814; Cory v. State, 22 Ala.App. 341, 115 So. 700; Bufford v. State, 23 Ala.App. 521, 128 So. 126; Smith v. State, 28 Ala.App. 506, 189 So. 86. It was disapproved in: Freeland v. State, 26 Ala. App. 74, 153 So. 294.

"The Supreme Court reviewed the charge in Russo v. State, 236 Ala. 155, 181 So. 502, 505, Justice Knight, in commenting on the propriety of the refusal of the charge, said: 'This

charge was fully covered by other instructions given at the request of the defendant. The court had charged the jury that they must acquit the defendant unless shown to be guilty beyond a reasonable doubt. This charge given the jury was far more rigorous against the state than refused requested charge 38, as pointed out in the case of Edwards v. State, 205 Ala. 160, 87 So. 179. The refusal, therefore, of charge 38 involved no prejudicial error.'

"In the case at bar the court orally and by written instructions charged the jury fully on the doctrine of reasonable doubt. We are persuaded that our refusal to base error here is controlled by the holding in the Russo case, supra.

"We reached this conclusion in the case of Bankhead v. State, 33 Ala. App. 269, 32 So.2d 814."

In the present case the court orally instructed the jury as follows:

"The burden is on the State of Alabama to convince you beyond a reasonable doubt and to a moral certainty of the guilt of this defendant of one of the charges contained in this indictment. He comes into this Court as all defendants, presumed to be innocent until the State, by the evidence from the witness stand, convinces you beyond a reasonable doubt and to a moral certainty of his guilt, and until the State does by their testimony, gentlemen of the jury, from the witness stand, convince you beyond a reasonable doubt and to a moral certainty of his guilt, why you would not be authorized to bring in a verdict of guilt."

Because of the conclusions in the Carroll case, supra, as to a charge of similar import to charge 14, now considered, and in further view of the court's oral instructions, we are of the conclusion that no error resulted from the refusal of charge 14.

158

We adhere to our former conclusions as to the propriety of the court's refusal of charge 8 for the reasons expressed in our original opinion.

Application overruled.