# Twitty *v.* The State.

## *Murder.*

(Decided July 6, 1910.   53 South. 308.)

1. *Homicide; Evidence; Character of Deceased.*—In the absence of any evidence raising the question of self defense the evidence of the character of the deceased was inadmissible.

2. *Same; Dying Declarations; Predicate.*—The admission in evidence of the dying declarations of the deceased finds sufficient predicate in the testimony of his wife that he told her that he was suffering great pain, that the shot was going to kill him and that he was bound to die; and in the testimony of his brother that he told him that his stomach and bowels were hurting him terribly and that he thought the shot would kill him.

3. *Same; Evidence.*—In a prosecution for murder, evidence that a witness had made unsuccessful attempts before the grand jury to obtain an indictment against the defendant was irrelevant.

4. *Same; Demonstrative Evidence.*—Where testimony had been offered describing how the deceased had cut defendant's hand, it was proper to permit the defendant to exhibit the scar in order to show the extent of the injury.

5. *Same; Indictment Against Deceased.*—In the absence of any evidence raising the issue of self defense, an indictment against the deceased charging him with assault with intent to murder, pending at the time of his death, was irrelevant.

6. *Same; Hearsay; Evidence.*—Evidence that the deceased had said that he was drinking at the time he was shot was hearsay and inadmissible.

7. *Same; Evidence of Other Offenses.*—It is not admissible to show in a prosecution for murder that the deceased had burned a dwelling house belonging to the witness.

8. *Same.*—Testimony that just before witness saw deceased, he had seen certain boys with a jug of whisky, was not admissible.

9. *Same; Statement of Deceased.*—Testimony that deceased's father had said to him, "John, whisky is the cause of this," and John's reply; "Yes," was not admissible, since not a part of the res gestae of the homicide and the mere expression of an opinion not showing which party was under the influence of whisky.

10. *Same; Relevancy.*—In a prosecution for murder, it was not competent to show that a certain party had given defendant certain advice about leaving.

11. *Same; Character of Deceased.*—Where the defendant had testified that deceased was a dangerous, fighting man, it was competent for the state to show that he would fight a fair fight.

[Twitty v. The State.]

12. *Same; Instruction; Force.*—A charge asserting that a person has the same right to use such force as may be reasonably necessary to protect himself from great bodily harm as would be required to prevent his life being taken, did not attempt to define self defense, and was properly given.

13. *Same; Self Defense.*—A charge asserting that the burden was on the defendant to show self defense, and if the jury had a reasonable doubt as to whether he acted in self defense, he should be acquitted, left it to the jury to determine what constituted self defense, and was properly refused.

14. *Same.*—A charge asserting that to justify homicide on the grounds of self defense, an actual danger to the life or person of the party killing is not necessary, if there be an appearance of danger caused by the acts or demonstration of the party killed, so as to produce in the mind of the party slaying, a reasonable expectation or fear of death, or serious bodily harm, was properly refused in failing to assert that the appearance of danger was to life or great bodily harm, or that it was such as to reasonably impress a man that such danger existed.

15. *Same.*—A charge asserting that the law gives to every one the right to kill in self defense, where he is not in fault in bringing on the difficulty is manifestly bad.

16. *Same; Duty to Retreat.*—A charge predicating an acquittal on the doctrine of self defense which fails to include the duty to retreat, is always properly refused.

17. *Same.*—A charge asserting that when an assault is manifestly erroneous in its purpose and forcible in its nature,, as in murder, as distinguished from secret felony, the party attacked is under no obligation to retreat, but he may in such cases, if necessary, stand his ground and kill his adversary, was manifestly bad.

18. *Same.*—The use of the word, "supposed" instead of "bona fide belief" in reference to the defendant's situation and surroundings, renders a charge on self defense bad.

19. *Same; Dying Declarations.*—A charge that although the dying declarations of the deceased are admissible in evidence yet they should be received with great caution, because, etc., is argumentative, and properly refused.

20. *Charge of Court; Covered by Those Given.*—It is not error to refuse charges substantially covered by written charges already given.

21. *Witnesses; Character Testimony; When Admissible.*—Where a witness testified that he knew the general character and reputation of one of the defendants' he was properly permitted to give his testimony as to it, but where a witness testified that a certain witness' character was bad in the community in which he lived, he could not be permitted to testify whether, knowing such character, he would believe him on oath, since such testimony would not be predicated on a knowledge of the general character of the witness in the community in which he lived.

APPEAL from Colbert Circuit Court.

Heard before Hon. C. P. ALMON.

William H. Twitty was convicted of murder, and he appeals. Reversed and remanded.

The defendant was charged with the killing of John Murphy. The predicate by the state for the introduction of dying declarations was, first, by the wife of the dead man that he told her he was suffering great pain as the shot was going to kill him and that he was bound to die, and, second, by Murphy, a brother of the deceased, wherein deceased stated that he did not think he could get well, and said that his stomach and bowels were hurting him terribly, and that he thought the shot would kill him.

James K. Murphy was then introduced as a witness, and was asked the question: "Is it not a fact that you were before the grand jury shortly after your son was killed, and that one of the witnesses who saw the difficulty was there and testified, and the the grand jury refused to return an indictment; further, is it not a fact that you went before the grand jury in 1900 or 1901 or 1902, and attempted to get a bill against this defendant; further, is it not a fact that you had Nunnally subpoenaed as a witness and taken before the grand jury after your son was killed, and the grand jury refused to return an indictment; and, further, is it not a fact that you gave the solicitor the name of Nunnally and the Combs boys, and asked that they be subpoenaed before the grand jury in order to obtain an indictment against this defendant?" During the examination of the defendant he testified that Murphy cut his right hand awfully with his knife before the pistol was taken, and defendant offered to exhibit the scar, but, on objection, the court declined to permit it. The defendant offered an indictment pending in the circuit court against the deceased charging him with assault with intent to murder Ed Highfield, but the court declined to permit it to go to the jury.

While Luke Burns was on the stand, he testified that he was a member of the grand jury at the term of the court held shortly after the death of John Murphy, whereupon the defendant asked him the following question: "Is it not a fact that the grand jury of which you were a member investigated this case against the Twitty boys for the killing of Murphy, and is it not a fact that on that investigation you had one of the witnesses to the tragedy who is now dead, and who testified on that occasion that Murphy was assaulting the defendant with a knife, and defendant shot him, and, further, is it not a fact that the grand jury after a thorough investigation of the matter refused to return an indictment?" James K. Murphy was interrogated again by the defendant, and was asked: "Did your son tell you that he was drinking at the time he was shot?" which was objected to by the state and sustained. McAllister was introduced as a character witness, and after being cross-examined by the state, which cross-examination tended to show that something happened to render the two unfriendly, the defendant offered to show by the witness that the trouble between him and Murphy was that Murphy had burned a dwelling house belonging to the witness.

Gus Burns was next introduced, and stated that he saw the Combs boys just before he saw Murphy, and that the Combs boys had a jug of whisky. On motion of the solicitor the latter statement was excluded. The witness further was asked: "Did not James K. Murphy say to the deceased, 'John, whisky is the cause of this,' and did not the deceased say, 'Yes?'" This witness was further interrogated as to advice he gave the Twitty boys about leaving, telling them that they were poor and could not defend the suit, etc.

Rice Burns was examined as a witness, and, after testifying that Murphy's character was bad in the community in which he lived, was asked, if knowing his character, he would believe him on oath, but objection was sustained to the question. Defendant further offered to prove by the witness that deceased was a bad, desperate, and bloodthirsty man, capable of any form of meanness, and not worthy to be believed on oath. This was repeated in various shapes to several other witnesses.

The following charges were refused to the defendant:

"(12) The law gives a person the same right to use such force as may be reasonably necessary under the circumstances by which he is surrounded to protect himself from great bodily harm, as it does to prevent his life being taken. He may excusably use this necessary force to save himself from any felonious assault."

"(26) Whilst the burden of proof is on the defendant to show self-defense, yet, if upon all the evidence the jury has a reasonable doubt whether he acted in self-defense or not, he is entitled to the benefit of the doubt, and to an acquittal."

"(14) In order to justify homicide on the ground of self-defense, it is not essential that there should be any actual or real danger to the life or person of the party killing, if there be an appearance of danger caused by the acts or demonstration of the party killed, or by words coupled with the acts or demonstrations of such party, and if such act or demonstration produce in the mind of the party slaying a reasonable expectation or fear of death, or some serious bodily injury to himself, the party killing will be justified if he acts on such appearance of danger, and under such reasonable expec-

[Twitty v. The State.]

tation of fear, even though it subsequently appear that there was in reality no danger."

"(29) The law gives the right to every one to kill in self-defense in every case where the one who does the killing is not at fault in bringing about the fatal difficulty, and if the defendant is not at fault in bringing about the difficulty, and the circumstances were such as to lead a reasonable man to believe that his life was in imminent danger, and he believed that it was necessary to shoot the deceased in order to protect his own life, or his person from great bodily harm, he should be acquitted."

"(34) The law permits the dying declaration of the deceased to be introduced in evidence, but they should be received and weighed with great caution, and there are reasons for that: (1) They are necessarily wanting in that greatest test of the credibility of oral testimony, cross-examination. (2) The jury are without the opportunity of observing the temper and manner of the declarant. (3) Such testimony is generally given by relatives and friends of the deceased who had watched by his bedside, and bias is expected. (4) All narratives of other men's sayings should be scrutinized with care, because what men say is so liable to be misunderstood. (5) Many persons even in serious conversation assert as facts those things of which they have only a strong conviction, but have no knowledge from the senses.

"(35) Where an assault is manifestly erroneous in its purposes and forcible in its nature as in murder, as distinguished from secret felonies, the party attacked is under no obligation to retreat, but he may in such cases, if necessary, stand his ground and kill his adversary."

"(4) A reasonable doubt of defendant's guilt may exist when the evidence fails to convince the jury that there is a probability of defendant's innocence."

"(21) I charge you that the dying declarations should be received and weighed with great caution (stating the first and second reasons given in charge 34)."

"(15) A bare fear of the commission of the offense to prevent which the defendant used a deadly weapon is not sufficient to justify it; but the circumstances must be sufficient to excite the fears of a reasonable man, and the attacking party must have acted under the influence of such fears alone. It is not necessary, however, to justify the use of a deadly weapon that the danger be actual. It is enough that it be apparent danger, such an appearance as would induce a reasonable person in defendant's position to believe that he was in immediate danger of great bodily harm. Upon such appearances, a party may act with safety nor will he be held accountable, though it would afterwards appear that the indications upon which he acted were wholly fallacious, and that he was in no actual peril. The rule in such a case is this, what would a reasonable person, a person of ordinary caution, judgment, and observation, in the position of the defendant, seeing what he saw, and knowing what he knew, suppose from this situation and these surroundings. If such reasonable person, so placed, would have been justified in believing himself in imminent danger, then the defendant would be justified in believing himself in such peril and in acting upon such appearances."

JACKSON & DELONEY, for appellant. The averments of the indictment were contradictory to each other.— *Jones v. The State*, 63 Ala. 27. Counsel discuss their objection to dying declarations, but without citation of

[Twitty v. The State.]

authority. The court erred in not permitting the defendant to show previous attempts to procure an indictment against the defendant, and their failure.—*Salm v. The State,* 89 Ala. 56; *McHugh v. The State,* 31 Ala. 317; *Jones v. The State,* 76 Ala. 8. The court erred in refusing to permit the defendant to show the pendency of an indictment against the deceased at the time of his death charging him with assault with intent to murder.—*Green v. The State,* 143 Ala. 10. The court erred in not permitting it to be shown that the deceased said he was drinking at the time of the difficulty. —*Fare v. The State,* 58 Ala. 80; 6 A. & E. Enc. of Law, 123; *Walker v. The State,* 52 Ala. 194. The condition of the deceased at the time of the difficulty is immaterial.—102 Ala. 15. The court erred in not permitting it to be shown that just before the difficulty, the deceased was seen with two boys who had a jug of whisky. —111 Ala. 482; 89 Ala. 8. The court erred in excluding the evidence of character. *Crawford v. The State,* and cases there cited; *Redd v. The State,* 99 Ga. 210. Counsel discuss refused charges, but without citation of authority.

ALEXANDER M. GARBER, Attorney General, for the State. The court properly refused to allow the defendant to show that the deceased said that he had been drinking.—*Pulliam v. The State,* 18 Ala. 14; *Johnson v. The State,* 102 Ala. 1. Counsel discuss the other assignments of error and refused charges, but without citation of authority.

SIMPSON, J.—The appellant was indicted for murder, and convicted of manslaughter.

The defendant interposed a plea in abatement stating that his true name is William Henry Twitty, and that

he was never known by the name of "Wildy Twitty." The state demurred to said plea because it does not allege that the defendant was not known or called by the name of "Wid Twitty," or by the name of "W. H. Twitty." The court properly sustained said demurrer.

There was no error in sustaining the objection to the question to the witness Rice Burns as to the reputation of Murphy, the man who was killed, as there was no evidence before the court raising the question of self-defense.

The predicate was sufficient for admitting the dying declarations, and there was no error in admitting them. —*McQueen v. State,* 94 Ala. 50, 52, 10 South. 433; *Cole v. State,* 105 Ala. 76, 81, 16 South. 762.

There was no error in sustaining the objections to the questions to the witness Murphy as to what occurred before the grand jury. This was irrelevant matter to the issues in the case.

The court erred in refusing to allow the defendant to exhibit the scar on his hand. The witness Twitty had just described the manner in which Murphy, who was afterwards killed, had cut the defendant on his hand, and the defendant was entitled to exhibit to the jury the scar produced by said cutting, in order to show the extent of the injury inflicted on him.

There was no error in refusing to allow defendant to introduce in evidence the indictment for assault with intent to murder which was pending against said Murphy at the time of his death. This was irrelevant to any issue in this case.

There was no error in sustaining the objection to the question to the witness James K. Murphy: "Did not he (deceased) tell you that he was drinking at the time he was shot?" This was hearsay testimony of a fact, not a part of the res gestæ of the killing.—*Pulliam v.*

*State,* 88 Ala. 1, 6 South. 839; *Johnson v. State,* 102 Ala. 1, 16 South. 99.

There was no error in sustaining the objection to the statement by the witness McAllister that John Murphy (deceased) had burned a dwelling house belonging to him.

There was no error in sustaining the motion to exclude the statements made by the witness Burns that one of the Combs boys had a jug of whisky.

There was no error in sustaining the objection to the statement by the witness Burns that James K. Murphy said to his son, "John, whisky is the cause of this," and John's reply, "Yes." This was not a part of the res gestæ of the killing. It was a mere expression of an opinion, and did not show which party it was who was under the influence of whisky. The advice given by the witness Burns to the defendant was irrelevant, and properly excluded.

There was no error in sustaining the objections to the testimony of Rice Burns with regard to character, as the question is not predicated on a knowledge of the general character of the witness in the community in which he lived.

There was no error in allowing the witness Weaver to testify as to the general character of Wildy Twitty. The witness stated that he knew his general character and reputation.

There was no error in allowing the state to show that the character of John Murphy was that "he would fight a fair fight." The defendant had been allowed to prove that he was a dangerous, fighting man.

Charge 12, requested by the defendant, should have been given. It did not profess to set out the ingredients of self-defense, but dealt only with the question as to

[Twitty v. The State.]

whether great bodily harm threatened is equal to life threatened, so as to justify the use of force.

Charge 26 was properly refused, as it left it to the jury to determine what is the meaning of the legal term, "self-defense."

Charge 14 was properly refused. It does not assert that the "appearance of danger" was to life or great bodily harm, nor that it was such as to reasonably impress a man that such danger existed.

Charge 29 was properly refused. The charge asserts two propositions: First, that the law gives to every one the right to kill in self-defense, where he is not in fault in bringing on the difficulty, which is manifestly bad; and the second clause omits all mention of the duty to retreat.

Charge 34 is argumentative, and was properly refused.

Charge 35 was properly refused.

Charge 4 was properly refused, as charge 3, given by the court, is a substantial copy of it.

Charge 21 is substantially covered by charge 33 given at the request of the defendant, and was properly refused. Besides, it is argumentative.

Charge 15 was properly refused. It substituted "supposed" for "bona fide belief."

The judgment of the court is reversed, and the cause is remanded.

DOWDELL, C. J., and MCCLELLAN and MAYFIELD, JJ., concur.