## Langston v. The State.

### Manslaughter.

(Decided June 12, 1913. 63 South. 38.)

1. *Indictment and Information; Description of Decedent; Variance.* —Under section 7134, Code 1907, an indictment is sufficient, and there is no variance, if it describes the person killed by a name by which he was known and called, and by which defendant knew him, though it was not his true name.

2. *Homicide; Self-Defense; Duty to Retreat.*—A charge basing an acquittal as a part of its predicate on a finding that the killing was done under such circumstances as to justify a reasonable man in believing that he could not have retreated without increasing his peril, is not the same as a requested charge to which defendant was entitled, omitting such finding from its predicate, so as to justify its refusal on the theory of being covered by written charges given.

3. *Same.*—In regard to the issue of self-defense, one's residence, or the curtilage is not a place from which he is under a duty to retreat.

APPEAL from Morgan Circuit Court.

Heard before HON. D. W. SPEAKE.

Bob Langston was convicted of manslaughter in the first degree, and appeals. Reversed and remanded.

Defendant was indicted and tried for killing one Wiley Hill. It appears from the evidence that deceas-

ed and his wife went over to the home of defendant
near sundown on Saturday evening, and spent the night
there, and that on Sunday morning, when defendant's
wife and deceased's wife and the children had gone
down into the field to look at a ditch, which had been
cut, the killing took place between the house and
kitchen of defendant; no one being present or witness-
ing the killing. The defendant's version was that, pre-
vious to the time of the killing and before they moved
to the present place, the deceased had assaulted his
wife, and that on the occasion referred to, after his wife
and deceased's wife left, defendant said to deceased:
"I wish you would take your things and get away from
here, and never come back here any more." At that
time deceased was cleaning his finger nails with a knife,
and began cursing and abusing defendant and made a
lunge at him with the knife, and defendant ran to his
room to grab his gun, when deceased stepped off the
porch, and when he went to look to see where deceased
had gone, he found deceased around the corner of the
house with a heavy stick in his hand, who immediately
started towards defendant with the stick raised, where-
upon defendant fired.

Given charge 25 was as follows: "It is not necessary
under the evidence in this case that defendant should
have been actually in danger of death or great bodily
harm at the time he killed Hill, or that retreat would
have reasonably increased his peril, in order for him to
be justified in shooting Hill. He had the right to act
on the appearance of things at the time, taken in the
light of all the evidence, and he had the right to inter-
pret the conduct of Hill in the light of any threat that
the evidence proves Hill to have made against defend-
ant. If the circumstances attending the killing were
such to justify a reasonable man in the belief that he

was in danger of great bodily harm or death, and that he could not have retreated without adding to his peril, and he honestly believed such to be the case, then he had a right to shoot Hill in his own defense, although, as a matter of fact, he was not in actual danger, and retreat would not have endangered his personal safety; and if the jury bel'eve that defendant acted under such conditions and circumstances as above set out, the burden of showing that he was not free from fault in bringing on the difficulty was on the state, and if it is not shown, the jury should acquit."

Charge 11 is exactly similar to charge 25, except that all reference to the doctrine of retreat is omitted, in both the first and second clauses thereof.

WERT & LYNNE, and CALLAHAN & HARRIS, for appellant. The oral charge of the court excepted to was not based on the evidence, but based upon a predicate not shown in the evidence denying defendant the right of self defense.—1 Mayf. 807. The question of the identity of deceased presented itself in several ways, and is sufficiently presented by the written charge requested as to variance, and the court erred in refusing it.— *Crawford v. State,* 112 Ala. 1; *Russell v. State,* 71 Ala. 348; *Grattan v. State,* 71 Ala. 344; *Nutt v. State,* 63 Ala. 180; *Page v. State,* 61 Ala. 18; *Morningstar v. State,* 52 Ala. 405; 1 Chitty Crim. Law secs. 211-213; 75 Mass. 129. Charge 11 was not covered by charge 25 in such a sense as to justify its refusal on that ground, and as it stated a correct proposition of law, it should have been given.—*McCutchin v. State,* 59 South. 714. The difficulty was in the dwelling of defendant, and he was not required to retreat.—*Christian v. State,* 96 Ala. 92.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The evidence sought to be elicited regarding the details of the difficulty between the deceased and the defendant's wife was not proper. The defendant's only plea was "not guilty." Such evidence therefore could be no more than the particulars of a difficulty which could not have been admitted even if it had been between the defendant and deceased.—*Martin v. State,* 77 Ala. 1; *McAnally v. State,* 74 Ala. 9; *Gordon v. State,* 140 Ala. 29; *Sanford v. State,* 2 Ala. App. 81, 89. The exceptions relative to the defendant's conduct after the difficulty do not disclose error. The evidence was self-serving.—*Stewart v. State,* 63 Ala. 199; *Henderson v. State,* 70 Ala. 23; *Billingslea v. State,* 68 Ala. 486; *Shelton v. State,* 73 Ala. 5; *Jones v. State,* 103 Ala. 1; *Williams v. State,* 105 Ala. 96; *Chilton v. State,* 105 Ala. 98; *Ferguson v. State,* 134 Ala. 63. The alleged error regarding the name of the deceased was not taken advantage of by plea in abatement before arraignment and plea of not guilty.—*Miller v. State,* 54 Ala. 155; *Wells v. State,* 88 Ala. 239; *Welsh v. State,* 96 Ala. 92, 96; *Jackson v. State,* 102 Ala. 167, 170.

WALKER, P. J.—The indictment charged that the defendant "unlawfully and with malice aforethought killed Wiley Hill by shooting him with a gun," etc. After the state had introduced evidence tending to support the charge made in the indictment the defendant introduced testimony which tended to prove that the name of the person who was killed was Wiley Hill Goulsby. He excepted to the action of the court in permitting the introduction by the state of testimony tending to prove that the deceased was known and called by the name of Wiley Hill, moved to exclude the evidence

[Langston v. The State.]

offered by the state on the ground that there was a variance between the allegation of the indictment and the evidence offered as to the name of the person who was killed, and requested written charges to the effect that, if the family or surname of the person who was killed was Goulsby and not Hill, then the jury should find the defendant not guilty. We are not of opinion that the court was in error in its rulings in this connection. It is not doubted that a material averment of an indictment for homicide is the one which is descriptive of the person charged to have been killed. The averment on this point must be such as to identify that person. As to this fact, as with regard to other facts constituting the offense, the requirement of the statute (Code, § 7134) is met by averring it "in such a manner as to enable a person of common understanding to know what is intended." "An indictment for murder must be so certain as to the party against whom the offense was committed that the prisoner will know and understand who it is he is charged with having killed."—*Page v. State*, 61 Ala. 16. It cannot be said, as a matter of law, that this is always best accomplished by stating such person's true name. He may be as well, if not better, identified by a name by which he was generally known and called, though that was not his true name. The truth of this statement is illustrated by the testimony in this case. The witnesses who testified as to the facts of the killing spoke of the deceased as Wiley Hill. The deceased's widow testified that she never knew him by any other name. It may be inferred from the testimony of the defendant himself that the deceased was known to him only by that name, and not at all by the name of Goulsby, though it turned out that the latter was his real surname. Throughout the defendant's testimony he spoke of the deceased as Wiley Hill

or Mr. Hill. If the deceased was generally known and called by that name, and was known to the defendant by that name, the indictment, in averring that Wiley Hill was the person who was killed, enabled the defendant to know and understand who it was he was charged with having killed. The charge in the indictment being that the defendant "unlawfully and with malice aforethought killed Wiley Hill by shooting him with a gun," and there being evidence in the case tending to prove that the person who was killed was known and called by the name by which he was called in the indictment, and that the defendant knew him by that name, it cannot be said that there was an absence of evidence to support the averment of the indictment, which was descriptive of the person who was charged to have been killed, or that as to this feature of the charge as made there was a variance between the allegation and the proof. The court would not have been justified in deciding that the averment in the indictment of the name of the person charged to have been killed imported anything more than that that was a name which identified the person referred to, or that that averment required for its support evidence to the effect that the alleged name was the true name of the deceased.

A statement indorsed by the presiding judge on written charge 11, requested by the defendant, shows that it was refused upon the ground that it was substantially the same as written charge 25, given at the request of the defendant. The court was mistaken in treating the two charges as substantially the same. The one which was given stated, as a part of its predicate for a verdict of acquittal, a finding by the jury that the killing was under such circumstances as to justify a reasonable man in believing that he could not have retreated without increasing his peril, while a finding to that

effect was omitted from the predicate for such a verdict which was stated in the charge which was refused. The court, by giving the one charge and refusing the other, in effect ruled that a statement of the defendant's observance of the duty to retreat was an essential part of a predicate for a verdict of acquittal. A ruling to this effect was not justifiable under the evidence in the case. That evidence was without conflict to the effect that the defendant fired the fatal shot when he was in his own residence or within the curtilage thereof. That was a place from which he was not under a duty to retreat. This being true, a statement of his performance of that duty did not constitute an essential part of a predicate for a verdict of acquittal.—*Harris v. State,* 96 Ala. 24, 11 South. 255. Refused charge 11, except in so far as it fails to hypothesize the defendant's observance of the duty of retreating to avoid taking the life of another, is one which it has several times been held should be given when requested.—*McCutcheon v. State,* 5 Ala. App. 96, 59 South. 714; *Bluitt v. State,* 161 Ala. 14, 49 South. 854; *Bluett v. State,* 151 Ala. 41, 44 South. 84. Following these rulings, it must be held that in such a case as the present one it is error to refuse a charge which, with the exception stated, is of the same import. The record does not show that this error was cured by the same or substantially the same proposition which was asserted in the refused charge, being covered by other instructions given at the request of the defendant. The result is that, because of the error committed in refusing to give the charge mentioned, the judgment must be reversed.

Reversed and remanded.