(75 South. 715)

LANGSTON v. STATE. (8 Div. 416.)

(Court of Appeals of Alabama. May 29, 1917.)

1. HOMICIDE ⊂⊃309(1)—INSTRUCTIONS—MANSLAUGHTER.

An instruction, "Manslaughter is the voluntary killing of a human being," without stating that the killing must have been unlawful, is erroneous.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 649.]

**2. CRIMINAL LAW ☞823(4)—INSTRUCTIONS—CURE OF ERROR.**

A defect in an instruction defining manslaughter without stating that the killing must have been unlawful was cured by the giving of an instruction that the jury could not find defendant guilty unless he "unlawfully" took the life of deceased.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1992–1994, 3158.]

**3. CRIMINAL LAW ☞364(5)—STATEMENTS OF DEFENDANT—RES GESTÆ.**

Statements made by defendant in his own favor to a witness a few hours after the fatal difficulty, not being part of the res gestæ, were properly excluded.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 805, 808, 816.]

**4. CRIMINAL LAW ☞338(1)—EVIDENCE—RELEVANCY.**

Where, in a homicide case, there was no issue involving the mental or physical condition of defendant's wife, his testimony in respect thereto was properly excluded.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 752.]

**5. CRIMINAL LAW ☞456 — COMPETENCY — MENTAL CONDITION.**

A nonexpert cannot testify to the mental condition of a person until it has been shown that he has an intimate acquaintance with such person, and that his association with him is of such duration as to justify the forming of an opinion.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1045.]

**6. CRIMINAL LAW ☞829(1)—REFUSAL OF INSTRUCTIONS COVERED.**

Refusal of correct instructions covered by those given was not error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2011.]

**7. CRIMINAL LAW ☞763, 764(1)—INSTRUCTIONS—EFFECT OF EVIDENCE.**

A requested instruction in a homicide case that it was not necessary for defendant to retreat because the facts showed that he was in his own castle was erroneous as charging on the effect of the evidence and assuming the truth of defendant's theory that he was in the dwelling when the fatal shot was fired.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1731, 1737, 1742, 1743, 1746, 1758, 1769.]

**8. HOMICIDE ☞300(2, 13)—INSTRUCTIONS.**

A refused instruction to acquit defendant "if after looking at all the evidence" the jury could not say beyond a reasonable doubt that it was necessary for defendant to take the life of deceased to save himself from great bodily harm and death, or that he shot before such impending necessity arose, was erroneous in the use of the term quoted instead of "after considering all the evidence," and also for failure to include an instruction relative to defendant's freedom from fault in bringing on the difficulty.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 616, 628.]

**9. HOMICIDE ☞300(13)—INSTRUCTIONS.**

A refused instruction that to constitute putting one at fault in bringing on a difficulty he must do a wrongful act or say a wrongful word to the other party, or must say or do something to him to insult or anger him or with a view of bringing on the difficulty, erroneously limited the jury to a consideration of the purpose with which the defendant acted or said things which brought on the fatal difficulty.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 628.]

**10. HOMICIDE ☞300(13)—INSTRUCTIONS.**

A requested instruction that, if the killing was done while defendant was within the refuge of his home, he was not bound to flee from his home or to another part thereof to avoid his assailant, but could stand at bay and repel and kill his assailant if necessary to save his own life, was erroneous as basing an acquittal on defendant's necessity to kill, regardless of who was at fault in bringing on the difficulty.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 628.]

**11. HOMICIDE ☞300(14) — INSTRUCTIONS — SELF-DEFENSE.**

In a homicide case, it was error to refuse an instruction that the law gives a person the right to use such force as may be reasonably necessary under the circumstances by which he is surrounded to protect himself from great bodily harm, as it does to prevent his life being taken, and that he may excusably use this necessary force to save himself from any felonious assault.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 629.]

**12. HOMICIDE ☞300(2) — INSTRUCTIONS — SELF-DEFENSE.**

A requested instruction that the killing was justifiable if the jury found from the evidence that defendant was assaulted by deceased, and that "he himself" was without fault, and that defendant reasonably apprehended death or great bodily harm to himself unless he killed his assailant, was properly refused as not clear, inasmuch as the words quoted could refer to deceased or to defendant.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 616.]

**13. CRIMINAL LAW ☞807(1), 813—INSTRUCTIONS.**

A refused instruction that, if any person attempts to kill another and is killed in such attempt, the slayer shall be acquitted, and that the law will justify the taking of life when it is done from necessity to prevent the commission of a felony, was objectionable as abstract and argumentative.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1805, 1959, 1960, 1979.]

**14. CRIMINAL LAW ☞762(3) — INSTRUCTIONS—EVIDENCE.**

A requested instruction that the hall from which defendant was alleged to have fired the fatal shot constituted part of his house was properly refused as on the effect of the evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1731, 1758, 1769.]

Appeal from Circuit Court, Morgan County; Tennis Tidwell, Special Judge.

Bob Langston was convicted of manslaughter, and appeals. Reversed and remanded.

The following charges were refused to defendant:

(2) If there is a probability of defendant's innocence, the jury should acquit him.

(5) I charge you that it was not necessary for defendant to retreat because the facts in the case show that defendant was in his own castle.

(6) If, after looking at all the evidence in the case, your minds are left in such a state of uncertainty that you cannot say beyond a reasonable doubt whether defendant acted upon a well-founded and reasonable belief that it was necessary to take the life of deceased to save himself from great bodily harm and death, or that he shot before such impending necessity arose, then this is such a doubt as would entitle defendant to an acquittal.

(7) To constitute putting one at fault in bring-

ing on a difficulty, he must do a wrongful act or say a wrongful word to a party, or must do or say something to such other for the purpose of insulting or angering him, or do or say something with the view of bringing on the difficulty.

(8) The defendant had a lawful right to order deceased to leave his home, and this he had a right to do for a reason, or without a reason.

(10) If you find from the evidence that the killing was done while defendant was within the refuge of his home, I charge you that defendant, within this refuge, may stand at bay, and may repel and kill his assailant, if this be apparently necessary to save his own life; nor is he bound to escape from his house in order to avoid his assailant. When a man is attacked in one part of his home, he need not withdraw to another part, though he may safely do so, and there find secure asylum.

(11) The law gives a person the right to use such force as may be reasonably necessary under the circumstances by which he is surrounded to protect himself from great bodily harm as it does to prevent his life being taken. He may excusably use this necessary force to save himself from any felonious assault.

(12) If you find from the evidence that defendant was assaulted by Hill, and that he himself was without fault, and that defendant reasonably apprehended death or great bodily harm to himself unless he killed his assailant, then the killing was justifiable.

(13) The law is that, if any person attempts murder of another, and is killed in such attempt, the slayer shall be acquitted and discharged; the law will justify the taking of life when it is done from necessity, to prevent the commission of a felony.

(15) I charge you as matter of law that the hall from which defendant is alleged to have fired the fatal shot constitutes a part of his house.

Callahan & Harris and Wert & Lynne, all of Decatur, for appellant. W. L. Martin, Atty. Gen., and Harwell G. Davis, Asst. Atty. Gen., for the State.

BRICKEN, J. This is the second appeal taken in this case. The former opinion will be found reported in 8 Ala. App. 129, 63 South. 38.

The defendant was indicted for murder in the first degree. On the former trial he was convicted of manslaughter in the first degree, and on appeal to this court the judgment was reversed, and cause remanded for new trial. Upon the trial appealed from in this instance he pleaded former jeopardy as to murder in the first and second degree, which plea was confessed by the state, and he was tried for manslaughter in the first degree. During the progress of the trial numerous exceptions were reserved to the rulings of the court on the evidence and to the court's refusal to give a number of written charges requested by the defendant. Exception was also reserved to that part of the oral charge of the court which undertook to define manslaughter in the first degree.

[1] The portion of the oral charge complained of was as follows: "Manslaughter is the voluntary killing of a human being." At the conclusion of the court's oral charge, in open court, and before the retirement of the jury, the defendant reserved an exception to that part of its oral charge to the jury where the court defined manslaughter in the first degree as follows: "Manslaughter is the voluntary killing of a human being." The court declined to modify or correct this definition, and the defendant duly and legally excepted. This question is therefore presented: Is this a correct and legal definition of the offense of manslaughter in the first degree? If not, wherein does it fail? The statute does not attempt to define manslaughter, so we must look to the common law for its definition. Smith v. State, 68 Ala. 430. The constituents of the offense as defined by the common law are "the unlawful killing of another without malice, either expressed or implied." 3 Brickell's Digest 218, § 560; Smith v. State, supra; Thomas v. State, 139 Ala. 85, 36 South. 734. There can be no manslaughter unless it is the result of an unlawful act and unless death resulted from such act. Smith v. State, 154 Ala. 31, 45 South. 626. Therefore a charge which pretermits the fact that the act was unlawful is incorrect and does not properly state the law. Smith v. State, 154 Ala. 31, 45 South. 626. If the charge omits the important qualifying clauses "unlawful" and "without malice," it is bad. Hornsby v. State, 94 Ala. 55, 10 South. 522. The charge condemned in Hornsby's Case, supra, is practically identical with that part of the court's oral charge in this case to which the court's attention was specifically called, and to which the exception was reserved upon the court's refusal to modify or correct this definition. A sheriff, in the proper discharge of his duty under the order of court, where a defendant has been tried and convicted of murder in the first degree, or other capital felony, and duly sentenced to death, may voluntarily deprive a human being of life. A soldier upon the battlefield may voluntarily deprive a human being of his life, and many other instances could be cited wherein the voluntary killing of a human being could in no sense be termed manslaughter in the eyes of the law. Thus it would appear that the exception in this instance was well taken; and, in the absence of further instructions from the court as to what constitutes manslaughter in the first degree, error in this instance would have been apparent.

[2] However, the giving of written charge 8 requested by the defendant, which charge must be taken in connection with the oral charge of the court as part of the law in the case, cured the error above discussed, the two together constituting a correct definition of the law of manslaughter in the first degree. Given charge 8 is as follows:

"You cannot find the defendant guilty in this case unless from the evidence you have an abiding conviction to a moral certainty that he unlawfully took the life of the deceased."

It will be seen that the giving of this charge cured the deficiency in the definition as announced by the court in its oral charge; and, when taken as a whole (which must be

done), a proper definition of the offense of manslaughter in the first degree was given to the jury, and therefore no injury follows.

[3] The ruling of the court in not allowing witness John Washburn to testify what the defendant had told him about the shooting a few hours after the fatal difficulty was free from error, as it was not a part of the res gestæ. It is not competent for a defendant to introduce his statements and declarations in his own favor unless a part of the res gestæ. Ferguson v. State, 134 Ala. 63, 32 South. 760, 92 Am. St. Rep. 17; McGuire v. State, 3 Ala. App. 40, 58 South. 60. ·

There was no error in sustaining the objection of the state to question propounded to defendant's witness Mattie Hill. The predicate laid to witness Dora McGehee had been proven as laid by this witness, and it was clearly within the discretion of the court not to permit a rehash or repetition of this testimony.

[4, 5] Nor was there error in sustaining objection to question propounded to defendant with reference to the mental and physical condition of his wife. It was wholly irrelevant and immaterial and could shed no light on the issues involved in this case; nor is it permissible for one not an expert to testify as to the condition of mind of another, the rule being that, before a nonexpert can testify as to the mental condition of a person, he must first be shown to have an intimate acquaintance with the party and that his association with him is of such duration as to justify the forming of an opinion. Green v. State, 168 Ala. 90, 53 South. 286.

[6] Refused charge 1 was argumentative and bad; the principle of law undertaken to be stated is substantially covered by given charges 2 and 3; hence there was no error in the refusal of charge 1.

Refused charge 2 stated a correct proposition of law, but its refusal here, however, is without error, as this charge was substantially covered by given charge 10.

Refused charges 3 and 4 are substantially covered by given charges 2, 3, and 4.

[7] Refused charge 5 was substantially covered by the charge of the court and the written charges given on the question of self-defense. It was otherwise objectionable, as it charged the jury on the effect of the evidence and assumed the truth of the defendant's theory that he was in the dwelling at the time the fatal shot was fired.

[8] Refused charge 6 was bad, and therefore properly refused. It uses the term "after looking at all the evidence" instead of the term "after considering all the evidence in the case," etc. This charge is also faulty in that it fails to include an instruction relative to the defendant's freedom from fault in bringing on the difficulty. There was no error in the refusal of this charge.

[9] Refused charge 7 limits the jury to a consideration of the purpose with which the defendant acted or said things which brought on the difficulty, and for this reason is bad, and there was no error in its refusal. Milton Smith v. State, 15 Ala. App. 662, 74 South. 755; Will Killen v. State, ante, p. 31, 75 South. 176.

Refused charges 8, 9, 14, and 17 contain principles of law relative to the right of defendant to compel deceased to leave defendant's home. As these charges are substantially covered by given charges 6 and 12, there was no error in their refusal.

[10] Refused charge 10 was bad, in that it based an acquittal on the defendant's necessity to kill, regardless of who was at fault in bringing on the difficulty.

[11] The refusal to give charge 11 was error; as this identical charge has been approved by this court and by the Supreme Court in many instances. Bone v. State, 8 Ala. App. 59, 62 South. 455; Black v. State, 5 Ala. App. 87, 59 South. 692; Twitty v. State, 168 Ala. 59, 53 South. 308.

[12] Refused charge 12 is not clear, and was therefore properly refused. From the wording of this charge the pronouns "he himself" could refer to the deceased and also to the defendant.

[13] Refused charge 13 is abstract and argumentative. This charge, however, was substantially covered by given charges on the question of self-defense. There was no error in its refusal.

[14] Refused charge 15 was upon the effect of the evidence, therefore bad, and properly refused.

Refused charge 16 was not applicable in this case; it being the general affirmative charge in favor of the defendant.

Charge 18 was substantially covered by given charge 5 and by other given charges; therefore there was no error in the refusal of this charge.

The rules of law contained in refused charges 19, 20, 21, 22, and 23 were substantially covered by the given charges in this case, and also by the oral charge of the court, and their refusal was not error. The refusal of a charge, though a correct statement of the law, should not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's general charge or in charges given at the request of parties. Acts 1915, p. 815.

For the error pointed out, the judgment of the lower court is reversed, and the cause remanded.

Reversed and remanded.