### SAVAGE v. STATE. (6 Div. 365.)

(Court of Appeals of Alabama. June 10, 1924. Rehearing Denied June 24, 1924.)

**1. Homicide ⬤⟿276—Questions as to fault, possibility of retreat, and necessity to shoot, held for jury.**

In homicide case, where testimony as to whether deceased or defendant provoked the shooting was conflicting, question of who was at fault, whether defendant could have re-

[1] Reported in full in the Southern Reporter; not reported in full in 146 Ala. 683.

treated without increasing his danger, and whether it was necessary to fire when he did, held for the jury.

**2. Criminal law ⬤⟿419, 420(1)—Homicide ⬤⟿ 158(1)—Statements of defendant held inadmissible as hearsay, and as not showing threat.**

In homicide case, remarks of defendant, who was deputy sheriff for a mining company, 40 minutes before the shooting, concerning deceased's failure to help to stop handling of liquor, that "he was going to stop it if it took a killing to do it," held hearsay, and inadmissible as introducing an immaterial issue prejudicial to defendant's case, and having no tendency to show a threat toward deceased.

**3. Criminal law ⬤⟿1169(1)—Testimony as to movements of defendant's witness held not prejudicial.**

In homicide case, admission· of irrelevant testimony that defendant's witness had come to place involved a week or so prior to trial, with other people, in "cars," not shown in any way connected with defendant, held not prejudicial.

**4. Witnesses ⬤⟿317(4)—That state's witness was gambling elsewhere at time of shooting was material to discredit him.**

That state's witness, who testified he was present, was elsewhere when the shooting occurred, and engaged in gambling, was material to discredit his testimony as to number of shots fired.

**5. Homicide ⬤⟿188(1)—Proof of deceased's reputation as "overbearing" held admissible.**

Proof of deceased's general reputation as an "overbearing" man held admissible to illustrate the circumstances of the killing and qualify. and give point to uncommunicated threats, as also .deceased's conduct at time of killing, and its exclusion was not cured by court's question whether witness knew deceased's reputation as being peaceable and quiet, or violent and dangerous, etc., omitting "overbearing."

**6. Homicide ⬤⟿192—Testimony of company manager that he had instructed deceased to co-operate with defendant, a deputy sheriff, held admissible.**

In prosecution against a deputy sheriff of a mining company for shooting superintendent after refusal to leave a negro dance hall, testimony of the company's manager that he had instructed deceased to co-operate with defendant in keeping white men away from the hall,. and told him that he had so instructed defendant, held admissible to show relation of the parties, and which provoked the difficulty.

**7. Homicide ⬤⟿163(1)—Whether deceased had had previous difficulty held irrelevant.**

In homicide prosecution, whether deceased had ever had previous trouble held irrelevant.

**8. Witnesses ⬤⟿277(2)—Cross-question whether defendant deputy sheriff had reported deceased's violation of prohibition law testified to held proper.**

In homicide case, when defendant, a deputy sheriff, testified that he had found deceased,

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

20 ALA.APP.—7

on former occasion, violating the prohibition law, cross-question whether he had reported it to the sheriff was proper.

**9. Criminal law ☞720(5)—State's attorney's statement held not reversible error.**

State's attorney's statement in argument that "one could go down the road and get a petition that a man's character is good, when his soul is as black as Hades," while not argument, *held* not reversible error.

**10. Homicide ☞77—"Manslaughter in first degree" defined.**

"Manslaughter in first degree" is unlawful killing of a human being, but without malice, either express or implied.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Manslaughter in First Degree.]

Appeal from Circuit Court, Walker County; R. L. Blanton, Judge.

Freeman Savage was convicted of manslaughter in the first degree, and appeals. Reversed and remanded.

In the oral charge, the court instructed in part as follows:

"Manslaughter in the first degree is the unlawful killing of a human being, but without malice, either expressed or implied. The unlawful killing of a human being—no malice."

W. C. Davis, of Jasper, for appellant.

There was error in the rulings on evidence by witness Cornelius, and as to witness Lipscomb. Ward v. State, 15 Ala. App. 613, 74 South. 733; Stokes v. State, 17 Ala. App. 27, 81 South. 363; Parris v. State, 175 Ala. 6, 57 South. 857. Where there is evidence of self-defense, evidence of the motive of deceased should be allowed. Downs v. State, 18 Ala. App. 451, 93 South. 76; Gafford v. State, 122 Ala. 54, 25 South. 10; Rigell v. State, 8 Ala. App. 54, 62 South. 977; Maxwell v. State, 11 Ala. App. 63, 65 South. 732; Richardson v. State, 204 Ala. 124, 85 South. 789; King v. State, 13 Ala. App. 91, 69 South. 345; Hodge v. State, 199 Ala. 318, 74 South. 373; Humber v. State, 19 Ala. App. 451, 99 South. 68; Olive v. State, 2 Ala. App. 77, 57 South. 66; Smith v. State, 183 Ala. 10, 62 South. 864; Morris v. State, 193 Ala. 1, 68 South. 1003; Ragland v. State, 178 Ala. 59, 59 South. 637. The objection to the argument of the solicitor should have been sustained. Chambers v. State, 17 Ala. App. 178, 84 South. 638; B. R., L. & P. Co. v. Drennen, 175 Ala. 338, 57 South. 876, Ann. Cas. 1914C, 1037; Cassemus v. State, 16 Ala. App. 61, 75 South. 267; Blevins v. State, 204 Ala. 476, 85 South. 817; Beard v. State, 19 Ala. App. 102, 95 South. 333; Gray v. State, 19 Ala. App. 550, 98 South. 818; Anderson v. State, 209 Ala. 36, 95 South. 171. To constitute manslaughter in the first degree, the killing must be felonious or voluntary. Code 1907, § 7090;

Turner v. State, 160 Ala. 55, 49 South. 304; Harrington v. State, 83 Ala. 9, 3 South. 425; Lewis v. State, 96 Ala. 10, 11 South. 259, 38 Am. St. Rep. 75; Fowler v. State, 161 Ala. 6, 49 South. 788; Reynolds v. State, 154 Ala. 14, 45 South. 894.

Harwell G. Davis, Atty. Gen., Lamar Field, Asst. Atty. Gen., and Curtis, Pennington & Pou, of Jasper, for appellee.

Testimony of threats by the defendant was admissible. 1 Mayfield's Dig. 837. Defendant had no legal right to show deceased was overbearing. 1 Mayfield's Dig. 155. The remarks in argument by the solicitor were free from objection. Bridgeforth v. State, 16 Ala. App. 584, 80 South. 158. The court's definition of manslaughter in the first degree was correct. Thomas v. State, 139 Ala. 83, 36 South. 734; Clarke v. State, 117 Ala. 1, 23 South. 671, 67 Am. St. Rep. 157; Flanagan v. State, 46 Ala. 703.

SAMFORD, J. Both the defendant and the deceased were employed by the Corona Coal Company, the deceased serving that company in the capacity of superintendent, and the defendant being deputized as a deputy sheriff for the purpose of rendering any service which might be necessary around the mining camp along the line of duties ordinarily performed by such officers.

[1] On Saturday night of the killing the deceased superintendent, a party by the name of Troy Hall, who was with the deceased and several others, went to a negro dance hall on the property of the coal company, and, after they reached there the defendant came up, ordered them to leave, and an argument ensued between the defendant and the deceased about the presence of Troy Hall at the dance hall. The deceased stated that Hall came there with him, and the defendant took the position that it made no difference whom he was with nor whom he came with, that all of them would have to leave. During the course of this argument the shooting took place, and, according to the testimony of the state's witnesses, the defendant provoked a difficulty and fired upon the deceased without any overt act on the part of the deceased, while the testimony of the defendant is directly to the contrary. It was therefore a case in which the jury had to determine who was at fault in provoking the difficulty, and whether the defendant could have retreated without increasing his danger, and whether it was necessary for him to fire upon the deceased when he did.

[2] During the examination of Corneleus, a witness for the state, he testified that about 40 minutes before the fatal shooting he saw defendant coming from the well, defendant stopped, and he and witness talked about some boys doing some shooting at the barber

shop, and defendant said he was going to stop it. Upon being pressed to state the exact language used by defendant he answered: "He said they had the wrong G—— d—— man running it, and he was going to stop it if it took a killing to do it." Motion was made to exclude this answer, which was overruled and exception reserved. Continuing witness stated, "In the afternoon there had been a shooting in the barber shop." Witness was then asked by the solicitor to tell what he (defendant) said. There were objection and exception to this question and ruling thereon. Witness, continuing, said: "He went on to tell about Mr. Davidson wouldn't help him do anything or stop any of the liquor that the boys was drinking around there." At this point the court began to ask questions of the witness, to which he replied: "Well, he just said Mr. Davidson wouldn't help him do anything with the liquor, and he said he was going to stop it if it took a killing to do it. He didn't state for sure what it was. When he used these remarks he was talking about Mr. Davidson and the whisky—about some . one handling liquor around there. The boys, I reckon, that had been drinking and shooting in the barber shop. He said Mr. Davidson was good about everything except liquor, and he wouldn't take no hand in it, and he was going to stop it if it took a killing to do it, and they had the wrong G—— d—— man running it." There were proper objections to the questions, motions to exclude the answers, and exceptions in each instance, duly and legally reserved. The foregoing testimony is hearsay and inadmissible. There is no tendency of a threat towards deceased; it sheds no light on the issues involved in this case. Its only effect would be to prejudice the defendant's case before the jury by the introduction of an immaterial issue, in no way related to the homicide here charged. Stokes v. State, 17 Ala. App. 27, 81 South. 363; George v. State, 145 Ala. 41, 40 South. 961, 117 Am. St. Rep. 17.

The statement of the language said to have been used by defendant to Corneleus is not susceptible of being construed into a threat against Davidson, the deceased. The court was in error in its several rulings on this question.

A proper predicate was laid for a dying declaration, and, therefore, if one was made, it was admissible as evidence, provided the statement itself was relevant. There was no motion to exclude that part of the dying declaration, which, under some of our decisions, would doubtless have been excluded on motions.

[3] Whether Tom Lipscomb, a defendant's witness, had come to Jasper "a week or so" before the trial in company with other people, in "cars," not shown in any way connected with defendant, while irrelevant, is not error of such nature as would authorize a reversal.

[4] The fact that Tom Lipscomb, a state's witness, was at another place than that testified to by him at the time of the shooting, and at such place was engaged in gambling, would be material as tending to discredit the testimony given by Lipscomb as to the number of shots fired, he having testified that he was in the dance hall at the time of the shooting.

[5] The defendant sought to prove the general reputation of the deceased, "as to whether he was a peaceful or overbearing man." This the court refused to allow. In Roberts v. State, 68 Ala. 156, such evidence is held always to be admissible where uncommunicated threats are received, and for the like purpose of illustrating the circumstances of the killing, and of qualifying and giving point to such threats, as also the conduct of the deceased at the time of the killing. Roberts Case, supra; Eiland v. State, 52 Ala. 323; Bowles v. State, 58 Ala. 335; Fields v. State, 47 Ala. 603, 11 Am. Rep. 771. The court sought to correct this error by himself, asking the witness the question, if he, the witness, knew the reputation of deceased as being a peaceable, quiet man, or whether he was violent, dangerous, or bloodthirsty. This question omitted the quality of "overbearing" included in the definition in the Roberts Case, supra, and to which defendant was entitled. The Roberts Case has never been overruled or modified so far as we know, and the Attorney General cites us no authority to the contrary. As to this proposition the trial court was in error.

[6] The dance hall at which this homicide took place was located in the camp of the Corona Coal Company, located at Patton, of which the deceased was the local superintendent, and defendant was a deputy sheriff, holding a regular commission, whose special duties, so far as the Corona Coal Company, was concerned, were to preserve law and order in the camp. The general manager of the company, and superior in authority to both deceased and defendant, was G. M. Powell, who fixed by his orders the general and special duties both as to deceased and defendant. Powell was being examined as a witness by defendant, who sought to prove by him that he, as manager, had instructed deceased to co-operate with defendant in keeping white people away from this negro dance hall, at the same time telling deceased that he had so instructed defendant. The court refused to permit this evidence, and defendant excepted. This evidence would have shown a modification of the authority of deceased as superintendent of the mines, and certainly was relevant to show the relative positions of the parties, at the time of the fatal difficulty, as related to the question of who provoked the difficulty. If at the time of the difficulty defendant was in

superior control as to whether white men should remain at a negro dance, it was the duty of deceased not to interfere with him in the discharge of that duty. · This evidence might have much weight with the jury in determining one of the main issues in the case, to wit; who was at fault in bringing on the difficulty.

[7] Whether deceased had ever had any trouble before this difficulty was not relevant to any issue in this case.

Questions asked defendant's witness Powell on cross-examination were properly allowed. Much latitude is allowed on cross-examination, and in this instance were well within the bounds.

The details of the conversation between the defendant's witness Lollar and deceased were not admissible, and were properly excluded. 1 Mayfield Dig. 331 (16).

[8] On cross-examination of defendant, after defendant had testified that he had on former occasion found deceased violating the prohibition law, it was within the bounds of fair cross-examination for the solicitor to ask him if he reported this to the sheriff.

[9] The statement of the solicitor in his argument that, "one could go down the road and get a petition that a man's character is good when his soul is as black as Hades," while not argument, is not reversible error. Bridgeforth v. State, 16 Ala. App. 584, 80 South. 158.

The question of malice is not involved in the judgment appealed from, hence we do not pass on the several 'charges involving malice.

[10] The court's definition of manslaughter is sustained by authority. Ragland v. State, 125 Ala. 30, 27 South. 983 ; Langston v. State, 16 Ala. App. 123, 75 South. 715; Thomas v. State, 139 Ala. 83, 36 South. 734.

Other questions presented will not likely arise on another trial.

For the errors pointed out, let the judgment be reversed and the cause remanded.

Reversed and remanded.