80 So.2d 302

**Lenward SMITH**

v.

**STATE.**

5 Div. 434.

Court of Appeals of Alabama.

May 18, 1954.

Rehearing Denied June 15, 1954.

Si Garrett, Atty. Gen., and Robt. Straub,. Asst. Atty. Gen. and Owen Bridges, Montgomery, of counsel, for the State.

Walter J. Merrill, Anniston and H. M. Brittain, Wedowee, for appellant.

CARR, Presiding Judge.

Lenward Smith, the appellant, and Sanford Smith, his brother, were jointly indicted on a charge of murder in the second

degree. Severance was ordered. The appellant was tried and convicted of manslaughter in the first degree.

Application for a continuance was made on the grounds that counsel for the defendant had not had ample time and opportunity to prepare for trial.

The accused was arrested on August 3, 1953. He was free from imprisonment on bond for about three weeks before trial on August 24, 1953.

This matter was addressed to the sound discretion of the trial judge, and we are not convinced that any abuse is shown in his action in overruling the motion. Morris v. State, 193 Ala. 1, 68 So. 1003; Adams v. State, 33 Ala.App. 136, 31 So.2d 99.

We do not see the need or necessity of going into a detailed delineation of the evidence. Clearly the defendant was not due the general affirmative charge. We hold also that the action of the lower court in overruling the motion for a new trial should not be disturbed. Appellant's counsel does not urge in brief that we should take a contrary view.

The prime factual issues revolve around the doctrine of self defense, which the appellant claimed.

The defendant testified in his own behalf and offered witnesses who deposed that his general reputation in the community was good. In this particular the proof extended no further than to show general good character.

In rebuttal the State offered a number of witnesses, each of whom first testified that the character of the defendant was bad. There were no objections interposed to this line of questioning.

Without any uncertainty this evidence was admissible for credibility purposes and in direct rebuttal of the good character evidence offered by the defendant.

Immediately following the indicated inquiries the solicitor asked each witness this: "Do you know his general reputation in the community for being a quarrelsome, contentious and overbearing person?"

Defendant's attorney interposed objections, taking the position that the general good character of the defendant did not put in issue for rebuttal purposes the bad character of the accused for peace and quiet.

Over these objections the court permitted each of these witnesses to answer the above question. The replies were in the affirmative, and the further responses were that it was bad.

A general rule is found in 22 C. J.S., Criminal Law, § 677(e), pages 1074 and 1075:

"While there is some authority apparently following a divergent view, it is generally the rule that the evidence of good character offered by accused may and must relate particularly to that trait of character which is involved in the crime charged, so that the proof of good character will render it unlikely that he would be guilty of that particular crime. The same is true of evidence in rebuttal of evidence of good character; and even though accused introduces only evidence of general good character, the prosecution in rebuttal may go further and prove his bad reputation for the particular phase of conduct involved in the offense."

In the case of Pierce v. State, 228 Ala. 545, 154 So. 526, 527, our Supreme Court seems to have settled the question in this jurisdiction. Justice Brown, writing for the court, held:

"After the defendant had offered evidence of his general good character, it was permissible for the state to show in rebuttal that his general character prior to the killing for which he was on trial for peace and quiet was bad."

We note here that the grounds of the objections in the case at bar did not raise the question that the inquiry should be related to the time prior to the homicide.

In Cauley v. State, 92 Ala. 71, 9 So. 456, the court had this to say:

"A person on trial for an affray may prove his general good character, or his good character as a peaceable, law-abiding man. In rebuttal, it may be shown that his reputation is that of a quarrelsome, fighting man. If tried for adultery, and the defendant offers in evidence proof of general good character, it may be shown in rebuttal that defendant's reputation for virtue is bad, or that his general reputation is that of a fornicator or an adulterer. This would be in rebuttal, and tend to overcome the presumption of innocence arising from good character. There could be no misunderstanding of such evidence, and the legal inference to be drawn from such proof".

It appears from the opinion that this is dictum, but a doctrine is clearly stated and it reflects unquestioned indication of the mind of the court.

Courts from other jurisdictions have adopted this same view.

In the case of Frank v. State, 141 Ga. 243, 80 S.E. 1016, 1030, the accused was on trial for murder of a female. The testimony tended to show that the homicide was committed in consequence of an effort or attempt to have sexual relations with the deceased. The court held in effect that under these factual circumstances, if the defendant introduced evidence of his general good character, the State could counter or rebut by offering proof of his general bad character for lasciviousness. The court made this observation:

"In a case of this kind the probative value of the defendant's evidence as to good character involved his character with respect to lasciviousness. If he be permitted to introduce evidence of good character as a substantive fact, where the trait of lasciviousness is involved, and the state should not be permitted in reply to introduce evidence of his bad character in regard to lasciviousness, it would in effect allow him to introduce evidence of a substantive fact and deny the state the privilege to rebut it. Under this view there was no error in admitting the evidence offered by the state tending to show the general character of the accused with respect to lasciviousness."

See also, State v. Villano, 142 A. 643, 6 N.J.Misc. 713.

■ The logic of these holdings seems to us to be sound. The appellant, in the instant case, was on trial for murder. The evidence of good character of the accused was exculpatory and vindicatory in purpose and effect. By its establishment attempt was made to lead the mind of the jury to conclude that the accused would be less likely to commit the offense for which he was being tried. It was pertinent, therefore, for the State to offer evidence to rebut this tendency by offering evidence relating to the traits involved in the prosecution.

Appellant's counsel seeks to support his position by citing and analyzing: Brown v. State, 20 Ala.App. 39, 100 So. 616; Dolan v. State, 81 Ala. 11, 1 So. 707; and Baugh v. State, 215 Ala. 619, 112 So. 157.

In each of these cases the defendant did not offer evidence of his general good character. We have verified this by referring to the original records. The fact that the defendants testified in the cases did not permit the State to counter with evidence of bad character for peace and quiet. Rebuttal proof could be confined to general bad character, but under the circumstances could only go to the credibility of the defendants as witnesses. These authorities do not control the question with which we are now concerned.

■ It is insisted that the form of the questions falls far short of proving bad reputation for peace and quiet.

We are here concerned with the three words, "quarrelsome", "contentious" and "overbearing."

In the early case of Roberts v. State, 68 Ala. 156, the Supreme Court held:

"The character of the deceased as a violent, dangerous, *overbearing,* or turbulent man, was also admissible evidence for the accused." (Emphasis ours.)

In the case of Savage v. State, 20 Ala. App. 97, 100 So. 919, 921, we held that the defendant should have been allowed to prove the general reputation of the deceased " 'as to whether he was a peaceful or *overbearing* man.' " (Emphasis ours.)

We do not have exactly the same factual situation in the instant case, however in the Roberts case, supra, the court held in effect that the proof of the overbearing character of the deceased was pertinent to illustrate the circumstances of the killing and "justify a resort to more prompt measures of self-preservation."

By analogy we think that proof of this trait was admissible to rebut the evidence of the general good character. In other words it had the equivalent effectiveness of establishing that the defendant had a bad character for peace and quiet.

As to the sufficiency and purport of the other words, there seems to be some conflict among the authorities. 64 A.L.R. pages 1029–1047, makes an extensive survey of the authorities, some of which treat the question of concern.

We will pretermit any decision on this matter.

The ruling of the court must be sustained by the application of the following rule: When more than one inquiry is included in one question, an objection to the whole is properly overruled if at least one phase of the query calls for competent testimony. Minto v. State, 8 Ala.App. 306, 62 So. 376; Baxter v. Wilson, 35 Ala.App. 196, 45 So. 2d 474; Coleman v. State, 87 Ala. 14, 6 So. 290; Smith v. State, 118 Ala. 117, 24 So. 55; Longmire v. State, 130 Ala. 66, 30 So. 413; Davis v. State, 159 Ala. 104, 48 So. 694; Wilson v. State, 12 Ala.App. 97, 68 So. 543; Patterson v. State, 191 Ala. 16, 67 So. 997.

Appellant's counsel excepted to this excerpt from the court's oral charge:

"* * * that the Defendant had a bad reputation as an overbearing, quarrelsome, and contentious person. That was admitted to you to shed light on who may have been at fault in bringing on the difficulty, which you will remember was one of the elements of self defense."

As we have pointed out, the evidence of the general good character of the defendant had the effect and tendency to exculpate him from the commission of the offense. This would include any legal justification he may have had to take the life of the deceased. He attempted to justify his act on the doctrine of self defense.

Likely the court unduly narrowed the application of the evidence in limiting it by charging that it would shed light on who was the aggressor or who was at fault in bringing on the difficulty.

In our view this element of the defense was included. Therefore it was not harmful to the appellant for the court to limit it within these bounds. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

Counsel excepted to this portion of the court's oral charge:

"But there are certain requirements that must stand in order for a plea of self defense to be a good defense. There are three essential elements, and those three elements must exist at the time of the fatal blow or at the time of the fatal shot. What are they? First, the Defendant must have been free from fault in bringing on the difficulty. Second, he must retreat, if he can retreat without increasing his peril, which means there must be no convenient mode of escape by retreat or by declining the combat. Third, at the time the fatal blow is rendered or the fatal shot is made, where such shot exists, he must believe in good faith that his life is in danger or that he is in danger of great bodily harm."

In support of his claim for error in this aspect appellant's attorney relies on a rule stated in Love v. State, 17 Ala.App. 149, 82 So. 639:

"Where a defendant does not provoke the difficulty, or is not at fault in bringing it on, and does not fight willingly, but uses no more force than is necessary to repel, the doctrine of retreat has no application;

for the defendant is there continually in a defensive attitude, and, in legal contemplation, on the retreat so far as the difficulty in which he is engaged is concerned."

The homicide of concern occurred at a fishing camp. Several parties had spent the night before at the place, and the evidence tends strongly to indicate the excessive consumption of intoxicating liquors played an important part in bringing about arguments and fusses which ultimately led up to the fatal difficulty.

It appears that the immediate cause of death was a fracture at the base of the skull of the deceased. According to the State's evidence this resulted from a fall against a rock or stone when the decedent was knocked down by the defendant or his brother, Sanford Smith. There is evidence also from which the jury could infer that the appellant kicked the deceased several times after the latter was on the ground. The proof brings into account the legal doctrine of aiding and abetting.

We certainly agree with the following statement in appellant's brief:

"In any event, after Lenward and Sanford Smith went back over to the shack about noon, a difficulty took place. The testimony concerning it and as to who was the aggressor in it cannot possibly be reconciled."

There appears serious conflict in the evidence as to whether the appellant fought willingly or used more force than was reasonably necessary.

Under the factual circumstances, we are clear to the conclusion that the doctrine announced in the Love case, supra, has no authoritative application.

We have responded to each question pressed in brief of appellant. This seems to cover the matters which merit any discussion.

The judgment below is ordered affirmed.

Affirmed.